Mr. Justice Clayton
delivered the opinion of the court.
This was an action of ejectment in the circuit court of Pon-totoc county, in behalf of. the Indian, for a section of land, claimed as a reservation under the 6th article of the Chickasaw treaty. The same land has been purchased of the government, at a sale of the public lands, by Wray, and a patent obtained therefor. The whole question is, whether the Indian reservee has preference over the subsequent patentee.
The portion of the treaty which gives rise to the claim of the Indian, is in these words: “Reservations, of a section each, shall be granted to persons, male and female, not being heads of families, who are of the age of twenty-one years, and upwards, a list of whom, within a reasonable time, shall be made out by the seven persons hereinbefore mentioned, and filed with the agent, upon whose certificate of its believed accuracy, the register and receiver shall cause such reservations to be located upon lands fit for cultivation, but not to interfere with the settlement rights of others.” 7 U. S. Statutes at Large, 450.
The reservation was secured before the date of the patent, and has preference over it, if the location was properly made. On this point the only evidence is the certificate of the register of the land-office at Pontotoc, showing that this Indian was located upon the land in dispute, in June, 1838. This certifi *461 cate was objected to, and the objection overruled; in which we perceive no error. By statute of this state, copies of the records appertaining to land-offices, duly authenticated by the proper officer, are made evidence. How. & Hutch. 605. The evidence establishes a location prior to the grant issued to the defendant, in the court below. But it is insisted, that it is not shown that the requisite preliminary steps were taken to authorize the location, as it is not shown that a list, including this Indian, was furnished by the seven chiefs, and filed with the agent, and his certificate of its believed accuracy furnished to the register and receiver, prior to the location.
This evidence was not necessary. The location is in itself evidence, that all the prerequisites were complied with. A violation of duty on the part of the officers who made the location, cannot be presumed. A grant raises a presumption that all prerequisites have been complied with. Polk's Lessee v. Wendell, 5 Wheat. 293; Bagnell v. Broderick, 13 Peters, 449; Newman v. Harris and Plummer, 4 How. (Mi.) R. 522. The principle is a general one, and applies to most acts of an official or a ministerial character.
In regard to the title of the Indian under this clause of the treaty, this court has already said, “ a title in fee passed, by this language, to the reservee. The term ‘ reservation ’ was equivalent to an absolute grant. The title passed as effectually as if a grant had been executed. The title was conferred by the treaty; it was not however perfect, until the location was made; location was necessary to give it identity. The location, it seems, was duly made, and thus the title to the land in controversy was consummated, by giving identity to that which was before unlocated.” Niles v. Anderson, 5 How. (Mi.) 383. A similar construction has been been placed upon the Choctaw treaty. 4 How. (Mi.) 555; Doe v. Coleman, 4 S. & M. 46.
In this case the location was made in June, 1838. The treaty gave the title, the location fixed the sp.ot, and gave identity to it. The right thus became complete at that day.
The advertisement of the sales at which Wray purchased, excluded from sale “ the lands selected as reservations under *462 the provisions of the treaty.” The subsequent patent issued to him for the same land was void, and might be so regarded even at law. When the reservation was selected, the land was reserved from sale, and a patent for it was wholly void. See 7 S. & M. 366 ; 2 How. S. C. R. 317, 344. It interposed no obstacle to the recovery of the plaintiff below.
In the progress of the trial, the defendant below propounded a question to the witness Edmundson, which was excluded by the court, and which forms one ground of exception. The interrogatory was, “ whether any, and, if any, what certificate was appended to the roll of the reservees returned by the chiefs and agent to the register’s office.” The exclusion of this testimony was correct. The Indians had done all in their power, to secure their reservations, by having their names put upon the roll. If the agent afterwards neglected his duty, by failing to annex a proper certificate to the roll, before he returned it to the register’s office, the Indian is not to be prejudiced thereby. Coleman v. Doe, 4 S. & M. 46. The certificate of the register showed, that the Indian was included in the list furnished by the chiefs and the agent to the register.
The instructions from the war department, as to the construction of the treaty have no binding force. One party to the treaty could add nothing to its terms, without the consent of the other. The treaty had a positive stipulation that the reservations under the 6th section should be located by the register and receiver. The instruction referred to in argument, provides “ that no location under any of the articles of the treaty, shall be considered as final, or as conferring any right whatever, until the same shall be approved by the president.” 2 Public Land Laws, Instructions, &c. 215. The rules of the department as to the mode of carrying the treaty into execution, and for the guidance of the officers of the government, not trenching upon the rights of the parties, would be considered obligatory. But the department could impose no new condition upon the reservees. The only class of cases in regard to the location of which, any discretion was granted to the secretary of war, was the reservation of orphan claims, in the 8th article.
*463 The residue of the Chickasaw country, after the reservations are taken and located, was the only portion which under the treaty could be sold, as public lands of the United States. Art. XI.
It is unnecessary to pass in review the several instructions given and refused, by the court below. They were evidently prepared with much skill and care, and were well calculated to call forth a decision upon the merits of the controversy. We have examined them carefully, and are of opinion that each was correctly decided.
No error is perceived in any of the proceedings, and the judgment is affirmed.