KYRON TIERNEY, CHARLES R. BRYANT, CHARLES N. MAY-BERRY, LOUIS M. DAVIS, JAMES W. CROSSEN, ALEX-ANDER BIVINS, JAMES D. RUSSELL, CHARLES A. HOLMES, THOMAS APPLEGET, AND THE TOWN OF TECUMSEH, PLAINTIFFS IN ERROR, v. HORATIO N. CORNELL, DEFENDANT IN ERROR.

| 3 | 267 |
| .8 | 122 |
| .8 | 317 |
| 16 | 61 |
| 3 | 267 |
| 27 | 586 |
| 3 | 267 |
| 33 | 580 |
| 3 | 267 |
| 35 | 593 |
| 3 | 267 |
| 40 | 51 |
| 41 | 471 |
| 3 | 267 |
| 44 | 632 |

Practice : ASSIGNMENT OF ERRORS. No errors will be considered upon the trial of a cause in the Supreme Court, except such as are assigned in the motion for a new trial.

———: OBJECTIONS TO TESTIMONY. Where objection is made to the admission or rejection of testimony, the reason should be given. *Morgan v. Larsh*, 1 *Neb.*, 363, *cited and followed.*

Towns upon government lands. It was the intention of Congress, in passing the act " for the relief of citizens of towns upon the lands of the United States, under certain circumstances," approved May 23, 1844, to leave the execution of the trust under said act to the legislative authority of each state or territory in which any such town was situated : and the act of the Legislature of Nebraska, entitled "An act to regulate the entry and disposal of town sites," is valid and binding, because it provides such rules and regulations for the execution of the trust, as are contemplated by the act of Congress. *Cash and Spaulding, appellants*, 6 *Mich.*, 193, *distinguished.*

———. And the trustee under said legislative act, in deciding who are entitled to lots under the trust, acts in a judicial capacity, and his decision cannot be assailed in a collateral proceeding, though it might be impeached for fraud.

Statutes. Where a statute, which confers the means of acquiring a right, prescribes an adequate *special* mode of determining, by a judicial investigation, the fact upon which the right depends, that mode is exclusive.

Evidence: PRESUMPTIONS. The law will presume official acts of public officers to have been rightly done, unless the circumstances of the case overturn this presumption; and acts done which pre-suppose the existence of other acts to make them legally operative, are presumptive proof of the latter.

THIS was a petition in error to reverse a judgment of the district court of Johnson county. Cornell was plaintiff in the court below, and judgment being rendered in his favor, the defendants prosecuted this petition in error.

The case is fully stated in the opinion of the court.

The statutes construed are the acts of Congress for the relief of citizens of towns upon the lands of the United States, 5 *U. S. Statutes at Large*, 657, and an act of the territorial legislature of Nebraska, generally known as the "Town Site Act:" *Laws of* 1858, 266.

*Gillespie & Appelget* for plaintiffs in error (with whom was also *E. Wakely*), presented the following points:

I. When a government puts its lands in the market it has a perfect right to prescribe the terms on which it will sell, and the mode to be pursued by the purchaser to obtain title; and when prescribed, title can be acquired in no other way; neither have either courts of law or equity a right to substitute a mode for that prescribed by statute. *Wilson v. Mason*, 1 *Cranch.*, 45. *United States v. Jonah Crosby*, 7 *Id.*, 115. *Huidekoper's Lessee v. Douglass*, 3 *Id.*, 1. *Tousley v. Johnson*, 1 *Neb.*, 95. *Ricks v. Reed*, 19 *Cal.*, 551.

II. The town site of Tecumseh was entered under a special enactment of Congress, which prescribed the mode to be pursued by the purchaser to obtain title to the same, or any portion thereof. *Act of Congress, May* 23, 1844, 5 *U. S. Statutes at large*, 656. *Laws of Nebraska*, 1858, 266. *Id.*, 1865, 50. *Id.*, 1867, 94.

III. The act of Congress, creating the trust provided for two classes of trust to be exercised over two distinct classes of property. *Cash and Spaulding, Appellants,* 6 *Mich.*, 193.

IV. The conveyance of the town site of Tecumseh, by the United States to John W. Sayre, as Probate Judge in trust for the occupants, created an express trust, and being an express trust, the trustee could legally do no act not authorized by the instrument creating the trust. Further, the acts of Congress and the territorial legislature were a part of the contract or trust, and must be complied with or no title will pass. *Act of Congress May* 23, 1844. *Laws of Nebraska above cited.* 1 *Hilliard on Real Property*, 360. 2 *Washburn do., Chap.* 3, *Sec.* 4.

V. The deed of trust from Probate Judge Sayre to John Boulware was not authorized by the instrument creating the trust, and is therefore void.

VI. The quit claim deeds from John Maulding, J. C. Lawrence, A. T. Drake and George W. Boulware to Elizabeth Boulware passed no title, inasmuch as none of the parties above named were occupants of the town site at the time of entry or any time prior to the entry.

If any of the parties who quit claimed to Mrs. Boulware did at any time have a right to demand a title of the Probate Judge by virtue of occupancy, they never exercised that right as required by law, and have now lost the right by their own *laches*, and by the acts of the legislature made in pursuance of the act of Congress.

VII. Although John Boulware may have furnished the Probate Judge with the purchase money, yet the conveyance was made to the Probate Judge in trust for the occupants (of whom John Boulware was not one) with

consent of John Boulware, therefore no trust results to John Boulware. *Norton v. Stone*, 8 *Paige*, 222. *Leggett v. Dubois*, 5 *Id.*, 114. *Story's Equity Jurisprudence*, *Sec.* 1201, *note b*. 2 *Washburn on Real Property*, 437. *Saunders on Trust*, 227.

VIII.    A resulting trust will never be implied when there is an express one declared by word or writing. 2 *Washburn on Real Property*, 537.

IX.    A trustee cannot delegate his trust. *Berger v. Duff*, 4 *Johns Ch.*, 369. *Hawley v. James*, 5 *Paige*, 487. *Wilson v. Towle*, 36 *New Hamp.*, 129. *Saurez v. Pumpelly*, 2 *Sand. Ch.*, 336. *Bradford v. Bellfield*. 2 *Sim.*, 264. *Cooke v. Crawford*, 13 *Sim.*, 91. *O'Reilly v. Anderson*, 8 *Hare*, 101. *Greenleaf v. Queen*, 1 *Peters*, 146. *Newton v. Bronson*, 13 *New York*, 587. *Hill on Trustees*, 175.

X.    If conveyance is made *in trust* the *grantee* does not take *beneficially*. *Hill on Trustees*, \*113 *et seq.*, \*133.

XI.    If conveyed on *void* trust, there is a resulting trust to grantor, his heirs, and next of kin. *Hill on Trustees*, \*134.

*Isaac N. Shambaugh and O. P. Mason*, for defendants in error, presented the following points:

I.    No errors of the court below were pointed out in the motion for a new trial, and none should be considered in this court. Errors relied on must be specifically pointed out. *Midland Pacific Railroad v. McCartney*, 1 *Neb.*, 404, *and authorities there cited*. *Jolly v. Terre Haute Draw Bridge*, 9 *Ind.*, 417. *Independence Plank Road Company v. Doty*, 7 *Id.*, 580. *Kimble v. Glass*, *Id.*, 589. *Davis v. Scott*, 13 *Id.*, 506.

. II.  In respect to "the surveying of public lands settled upon and occupied as town sites," the act of May 23, 1844, establishes an absolute right in its provisions, which provide that "it shall be legal, etc., for the corporate authority (of the town) to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the *several use and benefit* of the occupants thereof, according to their respective interests," at the time of entry, upon showing a compliance with the requirements of the act.

It is a grant of lands, as lands, to some persons *in esse* at the time the proofs are made—not to persons who may afterwards clandestinely or otherwise get upon any portion of the lands or lots.

When the proofs show that the requirements of the act have been complied with, the parties, proprietors of the town and occupants of the lots, are *eo instanti* entitled to the benefit of the act and to have the trust established and declared in their favor.  And upon the proofs and entry being made, the law must presume that the persons interested at the time, have done all that the act of Congress contemplates, to acquire, not only their rights to the land, but also a preference to the claims of all other persons, and the right to receive the land from the trustee.

It is true that this interest in the lands is at first inchoate, but nevertheless valuable—it is authorized by law—established by act of Congress, for the act says, "for the several use and benefit" of the persons entitled to the same, "according to their respective interests." Hence, it is clearly a vested interest—a vested right in the persons interested at the time the proofs are made; and the act provides the means by which the interest or right shall be perfected into a title in fee, that is, through the trustee.  This interest contains the germ, it is a

Tecumseh Town Site Case.

vested right which expands and ripens into a perfect title.

The next paragraph in the act provides that "the execution of which trust"—what trust? The act creates but one trust,—the trustee is to "enter the land" in trust for the several use of those interested at the time the proofs are made, and the same is the trust property. This trust is held by the trustee, created by the entry of the lands and not the entry of lots. It certainly therefore is the land which constitutes the trust property. And in the execution of this trust, in the disposal of the property to the use of the beneficiaries "according to their respective interests," it is "to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory."

No doubt such rules and regulations would become necessary, for, without them, the trustee would have no guide to direct him in the disposal of the lands to the persons interested, and no rule to enable him to settle and determine disputed claims between different interested parties. Therefore, the legislature of Nebraska, by act of February 10th, 1857, prescribed the necessary rules and regulations, and by Section 1 made it the duty of the trustee to enter the lands "in trust for the several use and benefit of the occupants and *those holding by deed or otherwise.*" Section 2 provides for making deeds, etc.

This act very clearly and fully recognizes and adopts the construction which we have given to the act of Congress. It requires the trustee to execute deeds for part or parts of the land, or lots to such persons who may be entitled to the same. It makes the trustee the arbiter to determine every question, allows appeal from his decision to the district court, and hence, his action is conclusive unless appeal be taken from the same. It is not shown that any person or parties claimed prior equity

in any of the premises, and the presumption of law is that the trust was properly executed.

The trust was executed by the deed executed to Boulware. The only remedy 'to set aside this execution and the trust, was by appeal, as provided by the act. *Mills v. Paynter*, 1 *Neb.*, 443. *Davis & Barnes v. Murphy*, 3 *Minn*, 125. *Leach v. Rounds, Id.*, 448. *Castner v. Gunther*, 6 *Minn.*, 134.

III. In a chancery cause brought to this court upon petition in error, this court cannot review the findings of the court below on questions of fact; only errors of law can be considered in this court upon petition in error. *State v. Swartz, et al.*, 9 *Indiana*, 221. *Kimble v. Glass*, 7 *Indiana*, 589.

IV. The finding judgment and decree of the court below is correct and should be affirmed.

The execution and delivery of the deed by John W. Sayre, probate judge, in whom the title to this property in controversy was vested, conveyed to and vested in John Boulware, Sr., the legal title to all the property in dispute.

The pleadings and the proofs show that John W. Sayre executed the trust vested in him by the act of Congress in compliance with and according to the law then in force in the then territory of Nebraska, entitled " An act to regulate the entry and disposal of town sites." *Laws of* 1858, 266.

John W. Sayre conveyed by this deed the absolute title to the property in controversy, and fully executed the trust vested in him by the act of Congress. Boulware took the title completely divested of any trust created by the act of Congress, of May 25th, 1844. The trust created by the act of Congress vested the title in the probate judge for the use and benefit of the occupants of the town site. The probate judge fully and completely executed

this trust in the execution of the deed to Boulware, by a private arrangement between Boulware and his associates, and Boulware took the title from the probate judge for the benefit of himself and these associates. This was purely an individual and private matter between Boulware and his associates, and the proof shows that Boulware's associates had full knowledge and acquiesced in this transaction. Neither the town of Tecumseh, nor the trustees appointed by the commissioners, nor any one else except Boulware and his associates, had any legal or equitable right to this property, and the defendant in error holds the title of Boulware and his associates, and therefore has both the legal and equitable title.

V. John Boulware, Sr., was an occupant of the town site of Tecumseh, within the meaning of the act of Congress, of May 25th, 1844, and the act of the territorial legislature of November 4th, 1858, to regulate the entry and disposal of town sites.

A person may select a town site upon the public lands, cause the same to be surveyed and platted, and induce persons to move to and occupy the town site, spend large sums of money to build up and improve the place and assist mercantile and mechanical enterprise, open roads, construct bridges to make the site accessible to commerce and travel, and never actually reside upon the town site, but in such case would come within the spirit and meaning of the acts, by sharing and participating in the benefits of the acts referred to. But the answer in this case says that Sayre, probate judge, after entering the town site of Tecumseh, under the act of Congress of May 25th, 1844, caused public notice to be given of the fact of such entry in the manner required by law, and proceeded to execute the trust in pursuance to law and the statutes of Nebraska, and deed the lands to the occupants. If this be so, and the answer admits it, the presumption is very

strong that Boulware acquired these lots and property at
public sale, acting for himself and his associates, and took
the title and property divested of the trust created by the
act of Congress, and as a purchaser in good faith, for
value.

VI.   The acts of the plaintiffs in error created a cloud
upon the title of defendant in error.   A cloud upon a
title is such a colorable right of title as would depreciate
the market value of the land in the hands of one who
held the actual title.   The term color of title means a
deed or surety of the land placed upon the records of
land titles, whereby notice is given to the true owner and
all the world that the occupant claims title.   *Hodges v.
Eddy*, 38  *Vt.*, 345.

VII.   The effect of having color of title is sometimes to
extend by construction, a possession beyond the actual
occupation and sometimes to change the character of cas-
ual acts of entry upon land from acts of mere trespass to
those of possession.

VIII.   As to what constitutes color of title, any instru-
ment having a grantor and a grantee, and containing a
description of the land intended to be conveyed, and apt
words for their conveyance gives color of title to the lands
described.   *Brooks v. Bruyn*, 35 *Ill.*, 394.   *Washburn
on Real Estate*, 3 *vol., page* 139.

IX.   The color must arise out of some conveyance pur-
porting to convey title to a particular tract of land.   A
void deed may raise a color of title.   *Wofford v. McKen-
nan*, 23 *Texas*, 46.   *Charle v. Saffold*, 13 *Texas*, 94.
*Pillow v. Roberts*, 13 *Howard*, 472.

MAXWELL, J.

This action was originally brought in the district court of Johnson county by the defendant in error, Horatio N. Cornell, against Kyron Tierney and others above named, who are plaintiffs in error in this court.

Cornell, in his petition, alleged that John Boulware, John Maulding, J. C. Lawrence, George W. Boulware, and A. P. Drake, were proprietors and occupants of the town site of Tecumseh, in said county, located on the south half of section twenty-eight (28), in township five (5), north, range eleven (11), east of the sixth principal meridian, in the district of lands subject to sale at Brownville, Nebraska; that John Boulware, at his own expense, caused said land to be surveyed, divided and platted into lots, blocks, streets, and alleys; that said lands being so occupied and improved as a town site, John W. Sayres, then being probate judge of the county, in pursuance of the act of Congress in such case made and provided, entered and purchased of the United States in the year 1857, the said lands above described, in trust for the several use and benefit of the occupants thereof; that the said John Boulware paid and delivered into the hands of the said probate judge, the full consideration for said lands, being at the rate or price of one dollar and twenty-five cents for each acre thereof, and amounting to the sum of four hundred dollars; that said probate judge having executed and delivered deeds of conveyance in severalty to all persons and occupants who were entitled thereto, did on the first day of July, 1859, " in consideration of the premises aforesaid," sell and convey to John Boulware, by deed of general warranty, all the lands, lots, and blocks, in said town, which were not theretofore conveyed. And it is further alleged in the petition that Cornell has purchased the interest of the original proprietors of the town site, and holds the legal title to the

same; that in the month of January, 1872, Tierney and the others above named, being the trustees of said town set up a claim of title to the lots described in the petition, and that on or about the thirteenth day of February, 1872, the said trustees obtained from the probate judge of the county a deed for the lots in question; that on the 6th day of February, 1872, said trustees executed a deed of conveyance in trust to J. D. Russell, C. A. Holmes, and Alexander Bivens, to sell said lots at public sale, one-half of the proceeds to be paid to the corporate authorities; that none of the defendants in the court below are in possession of any of said lots; and that the deeds so executed by them cast a cloud upon Cornell's title. The prayer of the petition is for an injunction, and that the cloud created by said deeds may be removed.

The answer denies substantially the allegations of the petition, except as to the deeds made Feb. 6, 1872, and Feb. 13, 1872, and alleges that John Boulware, George W. Boulware, John Maulding, J. C. Lawrence, and A. P. Drake were not at the time the town site was entered, occupants of any part of said town site. The answer also alleges that there being no corporate authorities of said town, the probate judge of said county having entered said land as aforesaid, forthwith gave public notice of the facts of such entry in the manner required by law, and proceeded to execute the said trust in pursuance of law and the statutes of Nebraska, and made, executed, and delivered to each and every one of the occupants of said town site, a deed in fee-simple for such part or parts, lot or lots, of such land in said town site, as each of the said occupants was lawfully entitled to; and that every person who was entitled to a deed of conveyance from the probate judge as an occupant of the town site, did or should have received such deed before the fifteenth day of April, 1859.

The testimony was taken before a referee, and the cause

heard at the adjourned term of the court held in January 1873. The court found all the issues in favor of Cornell and rendered a decree as prayed in the petition.

A motion for a new trial was filed, the grounds assigned therefor being:

"*First.* Because the finding in this case is not sustained by sufficient evidence, and the decision of the court is not sustained by sufficient evidence, and is contrary to law.

*Second.* Because of error of law occurring at the trial and excepted to by defendant.

*Third.* Because of irregularities by which defendants were prevented from having a fair trial.

*Fourth.* Because of the admission of improper testimony excepted to at the time."

As this cause comes here by petition in error, no errors can be considered except such as were assigned in the motion for a new trial.

Upon the trial of the cause Cornell offered in evidence patents from the United States, to John W. Sayre, Judge, etc., for the tract of land occupied by said town, and three deeds executed by the probate judge of said county, and delivered to John Boulware. The first of said deeds, dated April 15, 1859, conveyed in fee to said Boulware fifty-four lots in said town. The second of said deeds, of the same date, conveyed in fee twenty-two lots in said town. The third deed, dated July 15, 1859, conveyed to John Boulware, " as trustee for the special use and benefit of the shareholders, and all persons having a legal interest in said town site, all lands, lots and blocks which are not deeded up to this date." The defendants in the court below objected to the introduction of these deeds in these words: " Three deeds from probate judge Sayre to John Boulware to which defendants except and object. Objection overruled. Defendant excepts." No reason is given why these deeds should not be used as evidence, and this

court has already decided that where objection is made to the admission or rejection of testimony, the reason should be given. *Morgan v. Larsh*, 1 *Neb.*, 363.

Cornell also introduced deeds tending to prove that he now holds the legal title of Boulware, and his associates for the lots in question. Tax receipts for the taxes of the years 1866, 1867, 1868 and 1869, were also introduced by him, and evidence to prove that John Boulware paid four hundred dollars to enter the land in question.

On the part of the defendants in the court below, J. C. Lawrence, one of the original proprietors, testified that he caused a house to be built on the town site in 1857, but did not occupy it himself; that in the year 1860, he moved on the town site and continued to reside there for five years thereafter; and that he never knew of the Boulwares, Drake, or Hixen erecting a dwelling house on the town site.

John Maulding, one of the original proprietors, testified that he paid eleven dollars of the fees for entering the town site; that he had lived on the town site for the last five or six years; that at the time of the entry of the town site the Boulwares lived at Nebraska City; that Lawrence also lived at Nebraska City; that he did not think Hixen or Drake were in the country; and that Dr. William S. Walker, C. A. Goshen, Field and Trick, were all the persons that he remembered as living on the town site at the time.

Copies of the county commissioner's record were also introduced showing the first organization of the town, by the appointment of trustees, Feb. 4, 1867; also an entry dated Aug. 3, 1868, declaring the town a body corporate; also an entry dated June 7, 1869, ordering a dissolution of the incorporation, at the request of a majority of the taxable inhabitants; also an entry dated January 29, 1872, declaring the town a body corporate, and appointing Tierney, Bryant, Mayberry, Davis, and Crossen, plaintiffs

in error, trustees; also the organization of the town company Nov. 17, 1856, whereby it appeared that John Boulware, had thirty shares, J. C. Lawrence, thirty shares, I. P. Drake, thirty shares, G. W. Boulware, thirty shares, A. Hixen, thirty shares, and twenty vacant shares, being two hundred shares in all, and that J. C. Lawrence was president of the company, and W. T. Walker, secretary; and an agreement to build houses on the town site, under pain of forfeiture.

The chief defense relied on by the plaintiffs in error, appears to be the fact that none of the parties, through whom Cornell claims title, were occupants of the town site at the time of the entry thereof by the probate judge of Johnson county, in January, 1859, and we are referred to the case of *Cash and Spaulding*, 6 *Mich.*, 193, to show that no title passes by a deed in such a case.

That was an appeal from the decision of Judge Goodwin, judge of the district court. On the 20th day of June, 1857, Henry Selby presented his petition to the circuit judge, representing that he was equitably entitled to the undivided half of lot six (6) in section twenty-five (25) within the limits of the town site of Ontonagan, of which he was then in the actual occupancy and possession as tenant in common with James K. Paul; that he acquired the right thereto by a quit claim deed from said Paul, dated November 1, 1856; that there was no other claimant or person in possession claiming adversely to petitioner and Paul; and he therefore prayed the judge, as trustee, under an act of the legislature, to hold in trust and convey lands included in the town site of Ontonagan, to allow his claim and execute a deed of said premises to him. Daniel S. Cash appeared and excepted to the jurisdiction of the circuit judge to proceed to adjudicate upon claims and lots, or other execution of the trust, on the ground that the legislature had provi-

ded no such rules and regulations for the execution of the trust, as were contemplated by the act of Congress of May 23, 1844. These exceptions were overruled, and Selby then filed an amended petition, setting forth in addition to the above, that the lot contained seventeen and sixty one-hundredths acres, and that petitioner took possession in April, 1855, and built a house thereon. Cash answered the amended petition, averring that the lot was never occupied by any person for the purposes of trade and that Cash had a valid claim thereto as pre-emptioner. The legislature of the state of Michigan passed an act, which was approved January 29, 1853, whereby the district judge was authorized to enter the several lots on section twenty-five, including only so much as was actually within the town site, and the trustee was directed to convey the lots, by granting to James K. Paul such lots as he might hold free from the claims of any other person by virtue of an equitable pre-emption thereto, and to all other occupants such lots as they held by virtue of contract with Paul. No other rules and regulations were made on the subject by the legislature. The court says, "Mr. Cash does not claim to have occupied the land as a trader, or as the inhabitant of a town, and his occupancy, therefore, would not come within the act of Congress, and if any portion of the subdivision had been occupied legitimately for town purposes he could not pre-empt it, and the law does not allow the judge to enter any sub-division not settled and occupied as a town site, and if this was not so occupied it was not withdrawn from private pre-emption. While the act of Congress leaves the details of the use of the proceeds to the surplus fund, to be regulated by the legislature, it is very clear that the law designed that they should be used for the common benefit in some way. * * * In the absence of any legal representative, at least, we think any one interested had a right to

appear and protect the common fund. The legislature created the trustee a tribunal, but instead of empowering him to do impartial justice, undertook by the act itself to dispose substantially of the whole matter. The whole tract is given to James K. Paul and his grantees. No one else was authorized to be considered or receive relief. The trust cannot legally be carried out under such a law."

And Judge Manning in the same case, page 214, says: "The act leaves it altogether to the local legislature, if the power be not in the trustee, to determine what disposition shall be made, within the objects of the trust, of town lots belonging to the community at large, and of the proceeds of such as may be sold."

The court held substantially, that the legislature had undertaken to dispose of the whole trust to Paul and his grantees, and authorizing no one else to be considered, and that as the act did not provide rules and regulations for the administration of the trust, it was therefore, void. There is not the least intimation in the opinion of the court, that with proper rules and regulations, allowing the trustee to decide who were entitled to a conveyance of any portion of the land held in trust, that if he erroneously conveyed to a party not entitled thereto, that the deed would be void, and would pass no title. Yet that is substantially what is claimed by the plaintiffs in error in this case. Our statute in force at that time, regulating the disposal of town sites, provided that the corporate authorities of the town, if incorporated, and if not incorporated, then for the probate judge of the county wherein the town was situated, to enter at the proper land office, the land so settled upon and occupied, and hold the same in trust for the several use and benefit of the occupants thereof, and those holding deeds or otherwise according to their respective interests, and deeds to be made accordingly. There was also a provision for determining the

rights of adverse claimants to lots, and allowing an appeal to the district court.

The act of Congress provides that if the town is not incorporated, the judges of the county court of the county in which such town may be situated, shall enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the the several use and benefit of the occupants thereof, according to their respective interests; "*the execution of which trust as to the disposal of lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same is situated.* Provided, that any acts of said trustees not made in conformity to the rules and regulations herein alluded to, shall be void and of none effect."

The trustee in a case of this kind, in deciding who are entitled to lots under the trust, acts in a judicial capacity and cannot delegate his authority to another; and if in making the trust deed dated July 1, 1859, he had done so, the deed would be void. But the answer *admits* that the probate judge entered the land and forthwith gave public notice, *as required by law*, of the fact of entry, and proceeded to execute said trust *in pursuance of law and the statutes of Nebraska*, and made, executed, and delivered, to *each and every one of the occupants* of said town site, a deed in fee-simple for such part or parts, lot or lots, of said land in said town site as *each of said occupants* were lawfully entitled to.

Inasmuch as our statute then in force provided that the probate judge was to make deeds to occupants and those claiming by deed or otherwise, it necessarily gave that officer the power to decide who were entitled to deeds, with the right of appeal from such decision to a higher court. And such a decision can not be assailed in a

collateral proceeding, although it might be impeached for fraud.   2 *Phillips on Evidence* 19, *note* 262.

And where a statute, which confers the means of acquiring a right, prescribes an adequate *special* mode of determining by a judicial investigation, the fact upon which the right depends, that mode must be exclusive. *State v. Marlow*, 15 *Ohio State*, 114.    *The Little Miami R. R. Co. v. Whitacre*, 8 *Id.*, 590.

The provision of the act of Congress that any acts of said trustee, not in conformity to the rules and regulations prescribed by the legislature, should be void, can only apply to acts committed without authority; and it does not change the rule that acts of a municipal officer, done without authority, are void.

The law will presume official acts of public officers to have been rightly done unless the circumstances of the case overturn this presumption; and acts done which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter.   *Bank of The United States v. Dandridge*, 12 *Wheat.*, 70. *Combs v. Lane*, 4 *Ohio State*, 112.    *Ward v. Barrows*, 2 *Id.*, 241.

Parsons says " cases often say that fraud makes a contract *absolutely void*, but by this it cannot be meant that the innocent party cannot waive the fraud and insist on the contract.   And such a waiver would be inferred from his continuing to treat as his own, the property which came to him by reason of the fraud.   The mere lapse of time, if it is considerable, goes far to establish a waiver of this right; and if it be connected with an obvious ability on the part of the defrauded party to discover the fraud at a much earlier period, by the exercise of ordinary care and intelligence, it would be almost conclusive." 2 *Parsons on Contracts*, 782.

It is not claimed by the plaintiffs in error, that the full value of the lots in controversy was not paid at the time

The People, ex rel., v. Gosper, et al.

of the purchase, nor is there any offer on their part to restore the purchase money. It appears that all the facts in relation to the purchase by John Boulware and other shareholders, were well known to the occupants of the town for more than twelve years prior to January 29, 1872, and no objection whatever made to Cornell's title.

The equities of the case are clearly with the defendant in error, and the judgment of the court below must be affirmed.

JUDGMENT AFFIRMED.

CHIEF JUSTICE LAKE concurs.