# Houseman v. International Navigation Company, Appellant.

*Land law—Islands—Warrant, survey and patent—Act of January 27, 1806, 4 Sm. L. 268—Accretions.*

The act of January 27, 1806, conferred on the land office authority to issue a patent for an island in the Delaware river. It appeared in an action of ejectment to recover an interest in such island that a patent was issued in pursuance of the warrant and survey. The warrant recited that the application was made pursuant to the provisions of the act of 1806, for an island in the Delaware river "lying at the mouth of the Schuylkill, near the upper end of Fort Island;" that the board of property issued an order for its appraisal by three appraisers; that two of the appraisers had made a report that they had appraised the land at $2.00 per acre, a one-third part of which had been paid to the state treasurer. *Held*, that the warrant, survey and patent were *prima facie* evidence that the conditions of the act of 1806 had been fully observed by the officials of the land office, and that the plaintiff in the ejectment was not required to show by evidence dehors the warrant, survey and patent, that the island was a natural island, that it had a soil capable of cultivation, and that the appraisers had regard for the soil in making their appraisement.

In such a case the presumption is that an officer performs his duty, and that his acts are regular and in conformity with the requirements of law. If the performance of any precedent act is necessary to the validity of the official act, there is a presumption in favor of his official act, which amounts to presumptive proof of the performance of the precedent act.

Accretions or the gradual and imperceptible additions to an island become a part of the original land, and the title to the accretions is vested in the owner of the original island. If it is doubtful on conflicting testimony

whether land in dispute is accretions to an original island, the question is one of fact for the jury.

*Ejectment—Evidence—Record of previous suit.*

In an action of ejectment for an undivided interest in land, the plaintiff may offer in rebuttal the record of a previous ejectment wherein the defendant was plaintiff to show that in the former suit the defendant in the second suit relied upon the same chain of title to recover the other undivided interest as that relied upon by the plaintiff in the second suit.

Argued Jan. 17, 1906.    Appeal, No. 192, Jan. T., 1905, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1899, No. 59, on verdict for plaintiff in case of Samuel F. Houseman v. International Navigation Company.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Ejectment for land in the fortieth ward of the city of Philadelphia.. Before VON MOSCHZISKER, J.

The facts are stated in the opinion of the Supreme Court.

Plaintiff presented the following points :

1. The warrant issued upon the application of Thomas K. Wallace, the survey and appraisement made in pursuance thereof and the patent of August 14, 1822, from the commonwealth to Wallace are prima facie evidence that the property therein described was in fact an island in 1822, and that it was properly patentable under the act of January 27, 1806. *Answer :* In answer to this first point, I will say that, while not affirming this point as stated, the papers which have been put in evidence in this case by the plaintiff as the application and proceedings in the land office of one Thomas K. Wallace, under which the patent to him was issued, are legitimate subjects for the consideration of the jury in deciding whether the land comprised within the original Wallace grant was or was not an island at the time of that grant, and whether or not it was properly patentable as such under the act of January 27, 1806, and after the lapse of the great number of years from the date of these proceedings, as shown by these papers, and in the absence of any direct proof to the contrary or proof from which they could reasonably make a finding to the effect that it was not an island as it is designated in the patent and other state papers, this patent and the other papers in evidence might well

be accepted by the jury as in the nature of prima facie evidence as stated in this point. [1]

2. The patent of August 14, 1822, conveyed to Thomas K. Wallace a valid fee simple title to the island therein described and its appurtenances. *Answer :* In answer to this second point, I will say that if the jury find that the land comprised within the original Wallace grant was an island, then, after the lapse of the long number of years since the date of that patent, the jury would be justified in presuming that all of the proceedings leading to the issuance of the patent were regular, and in treating the patent as conveying a valid fee simple title to the island therein described and its appurtenances. [2]

11. The island to which Wallace acquired title from the commonwealth under the patent of August 14, 1822, is admitted by the disclaimer and plea filed by the defendant in this case to be a part of the premises described in the plaintiff's writ, and the premises so described and claimed by the plaintiff are identical with the boundaries of Cabin island as shown upon the Gillingham plan of October 7, 1891. It is, therefore, admitted of record by the defendant that the island originally patented to Wallace is part of Cabin island, as shown upon the said plan of October 7, 1891. *Answer :* In answer to this eleventh point, I will say that the land covered by the Wallace patent is stated by the disclaimer and plea filed by the defendants in this case to be a part of the premises described in the plaintiff's writ. You have the evidence of the surveyor, Gillingham, that the description in the plaintiff's writ is coextensive with what the plaintiff now calls Cabin Island. If you believe this testimony, which has not been denied, to be correct, it, therefore, follows that the defendants have practically stated in their own disclaimer that the part as to which they disclaim and which they describe particularly as an undivided interest in the tract or parcel of land described in the patent to Wallace, is not a part and parcel of Cabin island as shown by the plan of October 7, 1891, which you have in evidence. [3]

12. Cabin island, as shown upon the Gillingham plan of October 7, 1891, is proved by the uncontradicted evidence to have been within the memory of persons now living a tract separated from Provence island by a channel or waterway. and from the government property by a gut, gully or ditch. There

is a presumption of fact that such portion of the property within these limits as lies outside the metes and bounds specified in the Wallace patent is appurtenant to the island conveyed to Wallace, and not to land on the northwestern side of the back channel or to land on the southwestern side of the big gut. *Answer:* In answer to this twelfth point, I will say that there is evidence in the case that the land called Cabin island, as shown on the Gillingham plan of October 7, 1891, was within the memory of persons now living, a tract apparently separated from Province island by a channel or waterway, and in front of the government property by a gut, gully or ditch. As to what this evidence proves and as to whether it is uncontradicted or not is a matter entirely for you to consider. As to the balance of the point, I will say that there would be a presumption of fact that the land formed by accretions exclusively to the fast land of what was originally the island which has been called in this case Cabin island, would belong to that island, and not to the land on the northwestern side of the back channel, or the land on the southwestern side of the big gut, this being subject, of course, to your finding that such an island as Cabin island existed as a distinct entity. [4]

Defendant presented these points:

8. As the appraisers' return has not been produced, and there is nothing to show that they had valued the soil of the alleged island as required by the act of January 27, 1806, and as the only evidence in the case shows that the Wallace tract was a part of a mud marsh and not an island within the meaning of the act, it is not an island the state could convey, under the general law. *Answer:* Refused. [5]

9. There being no evidence that the Wallace tract, upon the conveyance of which the plaintiff rests his title, was an island having a soil within the meaning of the act of January 27, 1806, the officers of the land office were not authorized by the act to grant the warrant for the survey of the land in question, therefore the plaintiff acquired no title, and the verdict must be for the defendant. *Answer:* In answer to this ninth point, I will say that the matter has already been sufficiently answered in my general charge and my answers to other points, and I refuse to further answer it. [6]

10. Unless the jury believe that the plaintiff secured an island having a soil capable of cultivation and not a mud flat when he purchased the Wallace tract, the verdict must be for the defendant. *Answer :* In answer to this tenth point, I will say that the matter has already been sufficiently answered in my general charge and my answers to other points, and I refuse to further answer it. [7]

11. If the jury believed that the tract of land called locally Cabin island was not a natural island within the meaning of the act of 1806, but merely a continuation of the swamp forming part of Mud island, the government property, the verdict must be for the defendant. *Answer :* I refuse to answer this eleventh point as stated. I have already charged you on the same matter, and will refer to the subject again towards the end of my charge. I call attention to the fact that while the point is stated in the past tense, no dates are given therein. [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1–8) above instructions, quoting them ; (18) admission in evidence of the record of the suit of International Navigation Company against Thomas Perkins ; (24) that the charge was inadequate and insufficient.

*Charles Biddle,* with him *Biddle & Ward,* for appellant.— The plaintiff did not establish the location of the island which he claimed : Kelly v. Graham, 9 Watts, 116.

An examination of the act of 1806 and the decisions under it, clearly establish that the land office was an agent for the state with limited power vested in them, that that power must be construed strictly, and that it was the duty of anyone relying upon a patent issuing from the land office to show that that office acted within the scope of its authority in issuing such a patent : Hunter v. Howard, 10 S. & R. 243 ; Skeen v. Pearce, 7 S. & R. 303 ; Allegheny City v. Reed, 24 Pa. 39 ; Poor v. McClure, 77 Pa. 214 ; Straub v. Dimm, 27 Pa. 36 ; Campbell v. Galbreath, 1 Watts, 70 ; Burd v. Seabold, 6 S. & R. 137.

The Perkins record was inadmissible : Chase v. Irvin, 87 Pa. 286 ; Timbers v. Katz, 6 W. & S. 290 ; Combs v. Hodge, 62 U. S. 397.

· *George Wharton Pepper*, for appellee.—A plaintiff in eject-
ment is not required to show by other evidence than the patent
itself, that the land office, as agent for the state of Pennsyl-
vania, had authority to issue the patent.

It is not incumbent upon a plaintiff claiming under a patent
to a island under the act of 1806, to prove affirmatively, by
evidence additional to that offered in this case by the plaintiff
that at the time of the granting of the patent the island was a
natural island, that it had a soil capable of cultivation, and that
the appraisers had regard to the soil in making their appraise-
ment: Lackawanna Iron & Coal Co. v. Fales, 55 Pa. 90;
Harkrader v. Carroll, 76 Fed. Repr. 474; Bank of U. S. v.
Dandridge, 25 U. S. 64; Jackson v. Cole, 4 Cow. (N. Y.) 587;
Coxe v. Deringer, 78 Pa. 271; Nofire v. United States, 164
U. S. 657 (17 Sup. Ct. Repr. 212); Wray v. Ho-ya-pa-
nubby, 18 Miss. 452; Ward v. Barrows, 2 Ohio St. 241;
Tecumseh Town Site Case, 3 Neb. 267; Valley Twp. v.
Bridge, etc., Co., 4 Kan. App. 622 (45 Pac. Repr. 660).

The Perkins record was properly received: Pope v. Allis,
115 U. S. 363 (6 Sup. Ct. Repr. 69); Lincoln v. Wright, 23
Pa. 76.

OPINION BY MR. JUSTICE MESTREZAT, April 9, 1906:

By an act of assembly approved January 27, 1806, 4 Sm.
L. 268, 1 Purd. 1194, the officers of the land office of the
state were directed to issue a warrant for any unappropriated
island in the rivers Delaware, Ohio and Allegheny under cer-
tain conditions and limitations prescribed in the act. Upon
application made for a warrant, the land office was required
to appoint three disinterested reputable persons to estimate
and value the land in such island. These appraisers were
required before entering upon the performance of their duties
to take an oath that they would estimate and make a true val-
uation of the land per acre contained in the island, and that
they were not interested in the purchase of any island in the
river. They were required to value the land in the island by
going upon it and having regard to the soil, wood, fisheries,
other advantages and local situation; and they or any two of
them having agreed on the real valuation per acre of the land
contained in the island, were required to certify the same to

the secretary of the land office, who should thereupon issue a warrant to the applicant after he had first paid to the commonwealth at least one-third part of the amount of the real valuation of the island. The balance of the purchase money was a lien on the land until paid, which was to be within four years after the date of the warrant, when a patent should issue to the applicant.

In pursuance of the above act of assembly, the secretary of the land office, on July 30, 1821, issued a warrant to Samuel Cochran, Esq., authorizing him to survey or cause to be surveyed to Thomas K. Wallace an island in the Delaware river, if not already appropriated, and to make return to the land office for confirmation. This warrant recites that Wallace by an application in writing dated June 30, 1820, and filed in the land office, had requested to take up an island, " situate in the river Delaware in Kingsessing Township, Philadelphia County, lying at the mouth of Schuylkill, near the upper end of Fort Island and opposite State Island, about one fourth of a mile southeast from said island." The warrant also recites that the board of property issued an order on June 30, 1820, for the valuation of the island to three persons named therein, requesting them to appraise the island; that by the report of two of the appraisers in writing, dated July 4, 1821, the island was valued at $2.00 per acre, the one-third part of which was paid into the office of the state treasurer. In pursuance of the warrant, the deputy surveyor of Philadelphia county surveyed the island on June 7, 1822, and returned the survey and draft of the island to the land office.

On August 14, 1821, the land office issued a patent to Wallace granting him " a certain island, in the river Delaware, situate in Kingsessing Township, in the County of Philadelphia," which is followed by a description of the island by courses and distances and a statement that the island contained twenty-one and one-quarter acres. The patent recites that the island was surveyed in pursuance of a warrant dated July 30, 1821 and granted to Wallace.

Wallace's title to the island became vested in Bastian and Lafferty, the latter of whom became the owner of the undivided one-third part thereof, which subsequently became vested in Samuel F. Houseman, the plaintiff.

By an act of assembly approved April 15, 1795, 3 Sm. L. 223, the commonwealth of Pennsylvania ceded to the United States " the island commonly called Mud Island, situate in the river Delaware, together with all improvements thereon erected, placed or being." No other description of the island granted is given. By deed dated August 29, 1899, the secretary of war and the secretary of the navy, in pursuance of authority conferred by an act of congress, conveyed to the defendant in this action, the International Navigation Company, " the right, title and interest of the United States in and to all that tract of land, situated in the County of Philadelphia and State of Pennsylvania, at the junction of the Schuylkill and Delaware Rivers, and bounded and described according to a survey thereof made by William H. Jones, District Surveyor and Regulator of the Twelfth District of Philadelphia, on the seventh day of October, 1891, as follows." The deed contains a description by metes and bounds of the island conveyed without giving the acreage, and excepts from the grant " the area embraced within the courses and distances given in a patent made by the Commonwealth of Pennsylvania to Thomas K. Wallace on the fourteenth of March, 1822." The habendum includes " the appurtenances, accretions and alluvion thereto belonging." By a recital in the deed it appears that the grant conveys " the right, title and interest of the United States in and to so much of the land described in deed by John W. Ashmead and wife to the United States, dated the twenty-eighth day of March, eighteen hundred and fifty-one, being in the vicinity of Fort Mifflin, on the Delaware, lying outside the dike or river bank and eastward of the fort, as will . . . . not be prejudicial to the interests of the United States." In pursuance of a warrant dated March 13, 1851, the deputy surveyor of Philadelphia county surveyed to Ashmead " an island in the river Delaware (sometimes called Cabin Island), Kingsessing Township, Philadelphia County, at the mouth of the river Schuylkill, within about one quarter of a mile southeast from State Island " except that part of the island patented to Thomas K. Wallace. A patent was issued to Ashmead on March 27, 1851, and he, by deed dated March 28, 1851, conveyed the island to the United States.

This was an action of ejectment brought September 13, 1899,

to recover "a tract of land composed partly of marsh or cripple covered with water at high tide, and partly of fast land, according to the survey made thereof, October 7, 1897, lying in the Delaware to the northeastward of Fort Mifflin and outside of that portion of the United States Government dike or river bank, extending in a northwesterly direction in the Fortieth Ward, formerly the Twenty-seventh Ward, Philadelphia, and described as follows . . . ." containing 111–1/10 acres. The defendant filed a disclaimer as to the undivided one-third of the portion of the premises named in the writ, which contains twenty-one and one-quarter acres and is described in a patent of the commonwealth to Thomas K. Wallace, his heirs and assigns, recorded in the land office at Harrisburg in Patent Book H., No. 20, page 306 ; and as to the residue of the lands described in the writ the defendant pleaded "not guilty."

The plaintiff claims that the land described in the praecipe and writ, exclusive of the twenty-one and one-quarter acres, covered by the Wallace survey and patent, has been formed by gradual accretions to the island granted to Wallace, and that he is the owner, as shown by his title above recited, of the undivided one-third of the Wallace island and hence, of the undivided one-third of all the. additions thereto made by the accretions.  The defendant company claims that Mud island included the twenty-one and one-quarter acre tract, and the land claimed by the plaintiff to be accretions to Cabin or Wallace island, that the Ashmead tract included a portion of the land in dispute, and that the deed of the United States made in 1899, conveyed to the company the land described in the praecipe and writ and claimed by the plaintiff.  The defendant company contends that the land in dispute had always been a mud flat and had been separated from the other portion of Mud island by a ditch dug for the purpose of draining a certain portion of the mud flat, around which a dike had been constructed, and that in 1897 and 1898 the company had dumped mud and soil on it and thereby converted the flat into arable land.

The court below charged that to entitle the plaintiff to a verdict the jury must find : "That Wallace acquired title by the patent of 1822 ; that the title acquired by Wallace under that patent covered all the fast land in an entire island ; that

this island has been properly located as a part of what we have been told is now known as Cabin island ; that the balance of the land sought to be recovered by the plaintiff in this action was originally low or marsh land appurtenant to the Wallace grant or land that has been added to the original Wallace grant by accretions, and that Cabin island, as it now exists, consists of the original Wallace grant with these low or marsh lands and accretions added thereto ; that any deposits of mud or dirt which may have been made to facilitate the filling in of the island were made on this appurtenant low or marsh land or on accretions already formed above low-water mark; that a one-third undivided interest in the title granted to Wallace has become vested in the plaintiff Houseman ; and all other minor facts which may be essential to a proper finding of these facts." As to the defense the learned judge said : " The defendants have set up several grounds of defense. The first is, that the plaintiff has not proved his case ; that is, that he has not shown facts which would justify a finding, that he holds title to the land described in the writ; next, that if he has shown a good title to any part of the land so described he has not shown such a title to a full one-third undivided interest; next, that they, the defendants, hold title by a grant from the United States government, and that the United States government took this land back in 1795, as part of an island, known as Mud island, or as marsh land appurtenant thereto, which was ceded to the government by the state of Pennsylvania under and by force of a certain act of assembly ; next, that even if this land in question was not included in the land of the United States government, then, that all of the land, excepting that originally included in the description in the Wallace grant, that is, all the land which has been formed by accretions was granted by the state of Pennsylvania to one Ashmead in 1851, and that they hold through the Ashmead title." Numerous points for charge, raising all the legal questions involved in the case, were submitted by counsel for both parties, and were, as we think, correctly answered by the court. The verdict was in favor of the plaintiff and the defendant company has appealed.

The act of 1806, as we have seen, confers on the land office authority to issue a patent for an island in the Delaware river. It is contended, however, by the appellant that the appellee was

required, in order to sustain .the Wallace patent, to show that the island was a natural island, that it had a soil capable of cultivation, that the appraisers had regard to the soil in making their appraisement. These facts must appear, it is claimed, by evidence dehors the warrant, survey and patent. With that conclusion we do not concur. Eighty-four years have elapsed since the Wallace patent was issued, and if the present holder of that title is required to prove those facts by evidence aliunde the papers themselves his title must fail, and the grant of the state for which it received full consideration goes for naught. That position, as we think, cannot be sustained by reason nor by any decisions called to our attention. The presumption is that an officer performs his duty, and that his acts are regular and in conformity with the requirements of law. If the performance of any precedent act is necessary to the validity of his official act, there is a presumption in favor of his official act, which amounts to presumptive proof of the performance of the precedent act: 22 Am. & Eng. Ency. of Law (2d ed.), 1267. To support a tax sale of real estate in this state, it is indispensable that the purchaser give to the treasurer his bond for the surplus of purchase money over and above the taxes and costs, but it was held in Lackawanna Iron & Coal Company v. Fales, 55 Pa. 90, an ejectment for land by the purchaser thirty years after he bought it, that as the treasurer's deed contained a receipt for the consideration and costs of the bond and he had paid the taxes and had recovered against the grantor of the defendant for trespass on the land, it would be presumed the bond had been duly given. In Jackson v. Cole, 4 Cow. (N. Y.) 587, SUTHERLAND, J., delivering the opinion (p. 596) said: "So in this case, the fact that the officers of government, whose duty it was to see the provisions of the act of 1787 carried into effect and complied with on the part of the trustee have proceeded as they could not, consistently with their duty have done, unless the trustee had performed whatever it was incumbent on him to do, is prima facie evidence of performance on his part." Wray v. Ho-ya-pa-nubby, 18 Miss. 452, was an ejectment by an Indian for a section of land claimed as a reservation under the Chickasaw treaty. The question was whether the Indian reserves had preference over a subsequent patentee of the government. The evidence of the location of the land was a certifi-

cate of the register of the land office subsequent to which a patent was issued. It was contended that it was not shown that the requisite preliminary steps were taken authorizing the location. But it was held that the evidence was not necessary. The court said : " The location is in itself evidence that all the prerequisites were complied with. A violation of duty on the part of the officers who made the location cannot be presumed. A grant raises a presumption that all prerequisites have been complied with. The principle is a general one and applies to most acts of an official and an administerial character." Ward v. Barrows, 2 Ohio St. 241, was an ejectment in which the plaintiff claimed title by mesne conveyances from the original owner and the defendants claimed title under a tax sale. It was contended that the certified copy of the return of the delinquent tax was irregular in certain details required by statute. The court said (p. 247) : " The law will presume all to have been rightly done unless the circumstances of the case overturn this presumption, and, consequently, as stated by the supreme court of the United States in Bank of the U. S. v. Dandridge, 25 U. S. 64, ' acts done which presuppose existence of other acts to make them legally operative are presumptive proofs of the latter. . . .' Facts presumed are as clearly established as facts proved, where no presumption is allowed." Tecumseh Town Site Case, 3 Neb. 267, was a bill to remove a cloud on a title. It was alleged that some of the proceedings necessary to support the title were irregular. MAXWELL, J., delivering the opinion, said (p. 284) : " The law will presume official acts of public officers to have been rightly done unless the circumstances of the case overturn this presumption ; and acts done which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter." Bixler v. Baker, 4 Binn. 213, was ejectment. The act of 1794 authorized the land office to issue patents for lands " whereon a settlement has been or shall be made, grain raised, and a person or persons residing thereon." A party cleared and cultivated about three-fourths of an acre of the 100 acres in dispute. Two justices agreeably to the statutory provision, gave him a certificate " that the land was improved, and had been so since the spring of 1795." Upon it a warrant was issued, and a survey was made and a patent issued to another person, the plaintiff, who held

the warrantee's title. Another party subsequently entered upon the land and made an actual settlement. The first party brought an action against the actual settler. TILGHMAN, C. J., in delivering the opinion, after deciding that the legislature had in contemplation an actual personal resident settlement, said (p. 218): "But it is contended, that supposing this to be the true construction of the act, the patent is conclusive evidence, that such settlement was made, because the officers of the commonwealth would not have issued it, without proof of the settlement. This argument is not correct. I agree that the patent is strong presumptive evidence of a settlement, and if the court had said so to the jury, all would have been right. But I cannot allow that the patent is conclusive evidence." Allegheny v. Nelson, 25 Pa. 332, was ejectment to recover an island in the Allegheny river. A patent was issued, under the act of 1806, but the return by the appraisers was silent as to the susceptibility of the island to cultivation. The defendants resisted recovery on the grounds that the land embraced in plaintiff's survey was not in fact an island and that, even if it was, it was not susceptible of such cultivation as the law required; and that, therefore, the acts of the officers, in granting the warrant and making a survey were unauthorized and void. As to the silence of the return on the facts required by the act, LEWIS, C. J., speaking for the court, said (p. 334): "His application, and the proceedings in the land office, were therefore legitimate subjects for the consideration of the jury in deciding whether the land was an island or not in 1828 and 1829, when it was applied for, appraised and surveyed as such. It is true that the appraisers omitted to certify according to the directions given to them, ' whether the land was susceptible of cultivation in grain or esculent roots, in common seasons.' They are silent on this point in their return; but they speak therein of having had regard to the 'soil,' etc., in fixing its value, and as their report was not rejected, but was accepted and acted on by the receipt of a portion of the purchase money, and the granting of a warrant, and causing a survey to be made, in pursuance of the application, the presumption is that the irregularity was dispensed with on other satisfactory evidence, that the island was susceptible of cultivation. These proceedings, as against a mere stranger, were surely prima facie evidence that all was

rightly done; and, as the evidence is not given on the paper-book, we are not to intend that the city of Allegheny was anything more than a stranger."

It is clear, we think, that under the authorities it must be presumed that all the necessary statutory prerequisites to give validity to the Wallace patent have been complied with by the land office. The patent shows that it was issued in pursuance of a warrant and survey. The warrant recites that the application was made pursuant to the provisions of the act of 1806 for an island in the Delaware river "lying at the mouth of the Schuylkill, near the upper end of Fort Island;" that the board of property issued an order for its appraisal by three appraisers; that two of the appraisers had made a report that they had appraised the land at $2.00 per acre, a one-third part of which had been paid to the state treasurer. We think the warrant, survey and patent were prima facie evidence that the conditions of the act of 1806 had been fully observed by the officials of the land office, and that the land described therein was, in 1822, an island and patentable as such under the act of 1806.

The appellant company further contends that the location of the island was not fixed with certainty. This, however, was a question of fact and was for the jury. Fixing the location of the island was necessarily attended with difficulty under the circumstances and while the evidence possibly was not as explicit and convincing as might be desired, yet it was sufficient to justify a finding by the jury. In locating the Wallace tract the surveyors made use of the original survey of 1822, the Shallcross survey of 1851 on which the Ashmead patent was issued, the Miller survey of 1860 made for the United States government, and the Gillingham survey of 1891. Gillingham testified that Cabin island was bounded on the north by the old Back channel, on the east and south by the low-water line of the Delaware river, on the west by United States government property, and that " the Schuylkill river and the Delaware river join just about" the island. He located the Wallace tract within the lines of the land described in the writ. It is true, one of the surveyors testified that the Wallace patent gives no monuments on the ground by which the location of the island could be made, but the several surveys were

used and by this assistance the location was made.    Both parties put in evidence the Shallcross survey of Cabin island showing the area and giving a description by courses and distances of the island patented to Ashmead in 1851.    On this survey the Wallace tract appears as part of Cabin island and a description by courses and distances is given of the tract substantially as it appears in the patent of 1822.    The Wallace tract is included within the boundaries of the Shallcross survey, but the acreage was excluded from it in issuing the patent to Ashmead.    In addition to this, the disclaimer filed by the appellant locates the Wallace tract as a part of the premises which the appellee designates as Cabin island and for which this action was brought. The documentary evidence, the disclaimer and the oral testimony were sufficient to go to the jury on the question of the location of the island.

It is well settled that accretions or the gradual and imperceptible additions to an island become a part of the original land and that the title to the accretions is vested in the owner of the original island.    The appellee claims that the land in dispute is accretions to the original Wallace island, and that he being the owner of the undivided one-third of the island has therefore like title to these accretions.    Whether the land in dispute was accretions to the original island was purely a question of fact and was properly submitted to the jury.

The appellant complains that the charge was inadequate in not defining the issues submitted to the jury.    We have alluded to the charge and what it submitted for the jury's consideration, and we do not agree with appellant that it was inadequate in this respect.    The learned judge pointed out the claims of the parties and distinctly told the jury what facts they must find before they could render a verdict for the plaintiff.    At least thirty-five requests for instructions covering the law on every disputed point in the case were presented to, and answered by, the court.    If, therefore, the jury did not comprehend the issues submitted or the law applicable to the issues, it was not the fault of the learned trial judge.

The eighteenth assignment alleges the court erred in admitting in evidence the record of the suit of the International Navigation Company v. Perkins, which was an action of ejectment brought by the navigation company, the appellant here, against Perkins

for, inter alia, the land in dispute in this action.    The company, the plaintiff in that action, recovered a judgment and obtained possession of the premises.    It relied on the same chain of title to Wallace island in that action, that the appellee relies on here, and on the strength of that title it recovered in the action. The record in that case was offered and admitted here, not as proof of the appellee's title, but in rebuttal as an admission by the present appellant in regard to the title to the premises in dispute in this case.    For that purpose it was competent evidence : 1 Greenl. Ev. (16th ed.) sec. 527 a ; 2 Wigmore on Ev. sections 1,065 et seq.; 1 Am. & Eng. Ency. of Law (2d ed.), 449 ; Truby v. Seybert, 12 Pa. 101.

It is conceded and the jury were instructed in answer to the appellant's first point that if the land covered by the Wallace patent was embraced within the boundaries of Mud island, ceded by the state to the United States in 1795, or the accretions thereto, the plaintiff had no title to the land in dispute and could not recover.    Under these instructions, the verdict establishes as a fact that the land sued for in this action was not a part of Mud island and that there is no outstanding title in the United States as the owner of that island.    The appellant company, therefore, is compelled to rely on the Ashmead grant, a part of which was, as appears by the deed, conveyed to it by the United States in 1899.    It did not include the island covered by the Wallace patent, and hence did not include the accretions to that island.    If, therefore, the jury found that Wallace island was not a part of Mud island, and the evidence satisfied the jury that the land in dispute was accretions to Wallace island, the verdict was necessarily for the plaintiff.

If the Ashmead tract was part of Mud island, ceded to the United States in 1795, it may well be asked why the government purchased it from Ashmead, who subsequently acquired it by patent from the state.    There would have been no necessity for such action by the government as it already had a good title to the land.    The appellant's explanation that it was done for the purpose of clearing the title is not sufficient.    That is simply a theory with no evidence to support it.    On the other hand, the deed to the appellant company shows that the land conveyed to it by the United States government was the gov-

ernment's interest in a part of the land described in the deed by Ashmead and wife to the United States. In no part of the government's deed to the appellant is any reference made to Mud island or that the land conveyed is a part of it.

We have carefully examined and considered the questions raised on this record and find no reversible error. We may suggest that it would have facilitated our labors if copies of the colored plans in evidence had accompanied the paper-books.

The judgment is affirmed.