## Bowser *versus* Bowser.

1. Where a wife purchased the real estate of her husband at a sale of the same by the sheriff, the title vested in her as her separate estate, though she had no estate before marriage, nor did any accrue to her from any other source than through her husband, or her own earnings, during coverture.

2. Purchase by the husband in the name of the wife is presumed to be a gift to her, and her title cannot be attacked on the ground of a conveyance in fraud of creditors by others than creditors, nor as a trustee by reason of the payment of the purchase-money, inasmuch as she did not stand in the relation of a stranger.

May 4th. 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *York county:* Of May Term 1876, No. 51.

This was an action of ejectment.

Lillie Bowser, plaintiff in error, defendant below, was the second wife of Samuel B. Bowser.

Emma Bowser, the plaintiff below, and defendant in error, was the daughter and only surviving child by his first wife, still a minor and suing in the name of her guardian, John Peeling.

The case was referred, under the Act of the 9th April 1868, to William Hay, Esq., who filed his report awarding the premises to Emma Bowser, the plaintiff below. Exceptions were filed, dismissed by the court below and judgment entered on the report.

Samuel Bowser bought the premises in dispute, which consisted of about thirty acres, from Nathan T. Meads, for the sum of $2600, paid $600 in cash, and gave a judgment for the balance of the purchase-money, $2000, payable in annual instalments of $500 each. Meads assigned the judgment to Thomas W. Wantland. Bowser at once entered into possession of the premises, residing there with his first wife Ellen, until her decease. He commenced to keep a store on the premises, did a good business and seemed prosperous, and was himself an energetic and industrious man. He however made

[Bowser *v.* Bowser.]

default in the first instalment, and Wantland's administrators issued execution on the judgment, the land was seized, condemned and sold by the sheriff to Ellen Bowser, the defendant's wife, for $2275, a deed executed by the sheriff, acknowledged, delivered and entered on record. To pay the purchase-money, she borrowed $1100 from Jonathan Neff, for which she gave a note or due bill to him, which she afterwards paid, Neff receiving part from her personally, and part from her husband, saying that she had sent it. The balance of the money she obtained from the Shrewsbury Bank on notes endorsed by her friends.

The wife Ellen had no estate of her own, either before her marriage or coming to her after her marriage. After the sale, the sign of the store "Samuel Bowser" remained, but the books, business, bills, &c., were in her name. She at times attended in the store, but was sickly, and the business prospered in and by the hand of her husband.

Ellen, the first wife, died on the 12th of June 1862, leaving two children, Emma, the plaintiff, and Frank, who died intestate, unmarried and without issue. Subsequently Samuel Bowser married Lillie, the defendant below, with whom he lived upon the premises until his decease, leaving four children by this marriage. After his marriage with Lillie, Samuel built upon the premises a barn, warehouse, carriage-house, wood-house, corn-crib and other buildings, and conducted the business of storekeeping until his decease. Lillie continued to reside there, and Emma brought this ejectment to recover the premises as heir of her mother.

The referee held that the title vested in the first wife Ellen by gift from her husband, and though the title would not be good as against the creditors of her husband, it was good as against him, his heirs and all other persons. It was conceded that the present value of the property was about $3000.

Exceptions were filed to this report, which were dismissed by the court and the report confirmed; and this action was assigned for error.

*W. C. Chapman* and *James Kell*, for plaintiff in error, cited Hallowell *v.* Horter, 11 Casey 375; Robinson & Co. *v.* Wallace, 3 Wright 129; Baringer *v.* Stiver, 13 Id. 129; Bucher *v.* Ream, 18 P. F. Smith 426, that where a wife had no separate estate, she could acquire none by her earnings during coverture. That the policy of the law is in favor of an equal distribution: Weaver's Appeal, 13 P. F. Smith 309. A conveyance that denudes a husband of all his property is more than a reasonable provision for his wife: Shepard *v.* Shepard, 7 Johns. Ch. 57; Benedict *v.* Montgomery, 7 W. & S. 238; Stickney *v.* Borman, 2 Barr 67; Coates *v.* Gerlach, 8 Wright 43.

[Bowser v. Bowser.]

*H. L. Fisher*, for defendant in error.—It is a question not affecting rights of creditors; therefore the cases cited not applicable. Wife may acquire separate property by gift from her husband: McKennan *v.* Phillips, 6 Whart. 575; Clancey on Rights of Mar. Women 259; 1 Fonblanque Eq. 97; 2 Roper on Husband and Wife 152; Lucas *v.* Lucas, 1 Atkins 270.

The judgment of the Supreme Court was entered May 15th, 1876,

PER CURIAM.—This is not a case between a wife and her husband's creditors. The only question is whether the wife of Samuel B. Bowser was in the deed from the sheriff to her of the estate of her husband Samuel B. Bowser, a trustee for her husband. This must be alleged either on the ground that he purchased the property in her name to defraud his creditors, or that he paid the money for his own use. But he cannot allege his own fraud as a ground of title; and on the ground of payment of the purchase-money, his wife did not stand in the relation of a stranger. Purchasing in the name of his wife the presumption is that it was a gift to her, and this was corroborated by his after conduct. Neither he nor she did any act to question her title.

Judgment affirmed.