## Brown, Appellant, v. Nagle.

Argued December 13, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Robert S. Bachman,* for appellant.

*Herbert F. Laub,* for appellee, did not appear and filed no brief.

OPINION BY CUNNINGHAM, J., May 3, 1935:

This is a proceeding in equity instituted by Bertha R. Brown to compel the defendant to account for certain sums of money allegedly held for her use. The defendant filed an answer to the bill, claiming certain credits against the fund. Apart from a few minor adjustments, which will be noted later, the court below allowed these credits and entered a money decree in favor of plaintiff in the amount of only $41.35. Plaintiff has appealed from this decree, filing numerous assignments of error to the findings of fact and conclusions of law of the court below and arguing that the major portion of the credits claimed by defendant should have been disallowed.

The nature of plaintiff's contentions will appear when the following facts have been outlined: Her husband, John Brown, inherited an estate of approximately $25,000 from his father in 1923, consisting of both realty and personalty. At that time he was working as a boxmaker, but, admittedly, was a man of intemperate habits and a free spender, and soon managed to dissipate a large part of his inheritance. In the early part of 1926, Brown, being in need of funds, got in touch with defendant, a distant relative and engaged in the real estate business. Brown explained to defendant that he had given a check without funds to meet it, and defendant was able to hold off proceedings

for collection of the check until he had sold one of Brown's mortgages to a man named Short. About the middle of 1926, Brown was again in need of ready money, and again sought defendant's advice as to the best way to raise cash. Defendant made a survey of Brown's real estate securities, and came to the conclusion that a certain Gebhardt mortgage, in the face amount of $6,500, was the most advantageous one to dispose of. This mortgage had originally been purchased with Brown's money and taken in his own name, but sometime previous to 1926 had been put in the joint names of Brown and plaintiff. Defendant was able to arrange for the sale and assignment of this mortgage to Short in a deal wherein Short exchanged two properties on Lehigh Street, Easton, and paid $500 in cash, for the Gebhardt mortgage; he also took a mortgage of $1,000 on one of the Lehigh Street properties and a mortgage of $2,000 on the other. Title to these properties was put in the name of plaintiff, and she was named as a mortgagor in the two mortgages on them.

In December 1926 it was necessary to raise an additional sum to pay for repairs to the Lehigh Street properties, and defendant was able to procure from Maria Serfass a $2,000 mortgage on the one at No. 420 Lehigh Street; he handled the money and paid off the Short mortgage on the property with $1,000 of the sum so obtained, retaining the balance for the Browns. The final transaction took place in April 1927, when the sale of both Lehigh Street properties was negotiated, through defendant, to one Luis Million. This purchaser assumed both mortgages on the properties, paid $1,500 in cash, and gave a second mortgage in the amount of $2,750. This latter mortgage was taken in the name of the defendant and was for the term of one year. Million paid the $2,750, with interest, to defendant in satisfaction of the mortgage in April 1928.

Defendant thus received in cash over the period in

question the sum of $3,915, being the $1,000 balance from the Serfass mortgage, the sum of $2,750 from the Million mortgage, and an additional amount of $165 as interest on the latter.

From December 1926 to December 1928, defendant made numerous disbursements from the funds in his hands, sometimes to plaintiff and frequently to her husband. In certain instances these payments were made by checks drawn by defendant to the order of plaintiff; in others, by checks drawn to the order of John Brown; and in still others by cash payments to Brown, for which defendant from time to time took his notes. In addition, defendant, occasionally and at the instance of Brown, drew checks payable to the mortgagees in certain other mortgages given jointly by plaintiff and Brown, to defray interest charges thereon.

In his answer, defendant claimed credit for all of these payments. He further asked credit, in the form of commissions, for his services in the Short, Serfass, and Million transaction; and also claimed the sum of $165, received as interest from Million, on the theory that he himself was entitled to interest upon the advance of some $1,300 made by him to the Browns during the term of the mortgage. The court below allowed all credits for actual payments alleged to have been made by defendant, and awarded him $82.50 (one-half of $165) by way of interest, this appearing to the court to be an equitable charge for the sums advanced. The commissions on the Serfass and Million transactions were allowed, but the commission on the Short transaction was refused upon the showing that defendant had received a fair commission from Short and that the Browns had not known of or consented to such double commission. The credits allowed by the court below aggregated $3,873, leaving, as above stated, a balance in favor of plaintiff (or her husband) in the amount of $41.35. Defendant has raised no objection to the

reductions just referred to. There was evidence to support the findings of the chancellor and they were affirmed by the court in banc.

Plaintiff makes a twofold contention. The first is that neither she nor her husband received certain payments set forth in the accounting, and notably the sum of $1,500 paid in cash by Million in April 1927. It is alleged that of this latter amount defendant retained $1,000 and only $500 was handed to Brown, who was present at the settlement. While Brown did so testify, he was contradicted not only by defendant but also by a disinterested witness from Million's office; both of them unequivocally declared that the whole sum of $1,500 was paid over at the time to Brown. The court below accepted the latter version. It had the opportunity to see and hear the witnesses and to pass upon their credibility. This item and all other alleged items of payment were gone into separately and with great detail during the course of the trial. The court below has made separate findings of fact as to all such payments and in each instance has found that the sums in question were in fact received either by plaintiff or by her husband. As stated, there was sufficient evidence to sustain each of these findings, and we, therefore, see no reason to disturb them.

Apart, however, from the detailed matters discussed in the preceding paragraph, plaintiff makes it her major contention that defendant should receive no credit at all for many of the payments made to her husband; her theory is that the Lehigh Street properties represented a gift to her and that, therefore, any proceeds derived from these properties should have been held for her sole account and disbursed only upon her order. In support of this contention, she points to the fact that the deeds to the Lehigh Street properties named her alone as the vendee and argues that, under the rulings of many decisions, a presumption that they were a gift arises in

her favor from such record title; in this connection she cites such cases as Bowser v. Bowser, 82 Pa. 57; Earnest's Appeal, 106 Pa. 310; Besterman v. Besterman et al., 263 Pa. 555, 107 A. 323; Gassner v. Gassner, 280 Pa. 313, 124 A. 483; and Buckwalter Stove Co. v. Edmonds, 283 Pa. 236, 128 A. 835. She, therefore, contends that defendant should have been refused credit for the sum of $1,500 handed to Brown in 1927, and for other smaller payments made from time to time to him either by check or in cash.

The general rule invoked by plaintiff is well established, but the presumption upon which she relies may be rebutted by clear and convincing evidence.

In Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644, cited and reaffirmed in Walters v. Western and Southern Life Insurance Co., 318 Pa. 382, 178 A. 499 our Supreme Court, speaking of such presumptions, said: "Considerable confusion appears in judicial opinions as to the nature of presumptions and their function in the administration of justice. They are not evidence and should not be substituted for evidence. ...... Presumptions are not fact suppliers; they are guide-posts indicating whence proof must come."

Here, defendant undertook the performance of his duty to go forward with the evidence by which he sought to overthrow the presumption of a gift. We are convinced, after a study of the record, that it clearly negatives any thought or intention of a gift of the properties to the plaintiff. Moreover, the rule is not an absolute one. It is invoked not only to protect the property of the wife, but also to place a heavy burden upon the husband who conveys a property to his wife with intent to defeat the claims of existing or contemplated creditors and then attempts to regain the property for himself after having accomplished that purpose. Naturally, where such a device is resorted to, courts are loath to restore the property to the husband

in the absence of convincing proofs that he never intended to divest himself of the title; the majority of the decided cases are of this character. In the present case, however, the usual situation is reversed and the husband here claims, in support of his wife, that the properties were the subject of a gift to her, but we are forced to the conclusion that such was never the intention of the parties.

There are two very obvious inferences to be drawn from the evidence as a whole. The first is that Brown was a spendthrift, incapable of preserving his inheritance, and was in constant need of money. By 1926 he had been forced to dispose of a large part of his father's estate. He had given worthless checks, and according to the record had at least two judgments outstanding against him. At this point he approached his friend and relative, the defendant, with the primary object of raising more money. Defendant was able to put through the transactions with Short, which have been outlined, and testified that after they were concluded he called at the home of the Browns and was asked by plaintiff whether there was not some way in which her husband could be kept from such a rapid dissipation of his inheritance. Defendant then suggested the device of placing the properties in the name of the plaintiff. There was no suggestion at that time, either by defendant or by Brown, that the properties should be definitely given to plaintiff.

The second is that the Browns had little, if any, conception of the legal incidents of title. This is quite apparent from the scanty knowledge shown by them of the various transactions which have been related. It is further demonstrated by the indefinite and arbitrary manner in which plaintiff attempted to allow or reject credits claimed by the defendant. In her bill she recognizes and admits the validity of certain payments concededly made to her husband alone. But, when ques-

tioned in detail by defendant's counsel as to each separate payment to her husband, she approved some and rejected others without any apparent reason for the distinction, except that she showed a willingness to admit the smaller payments and a determination to reject the larger ones.

We agree with counsel for plaintiff that a woman ignorant of her legal rights should not necessarily be foreclosed by her answers when upon the witness stand. On the other hand, those answers do make it clear that at no time did she conceive of the properties or their proceeds as being solely her own; and her objections to the payments to her husband went rather to their size than to the question whether they had, in fact, been made. We think this is convincing evidence that the principal concern of all parties was not to place the properties beyond the reach of Brown, but rather to provide a method whereby his spending would be thrown into a lower gear. In other words, the primary intent was to place the control in the hands of the defendant rather than in those of the plaintiff, with the expectation not only that defendant's superior business judgment might be made available, but also that Brown would find it more difficult to lay his hands upon the money.

This conclusion is definitely borne out by the actual conduct of the parties during the period of defendant's stewardship. Brown himself never treated the properties as though they had passed out of his hands into the hands of his wife. It was Brown who went to defendant at the time of the Short transaction, not with the idea of effecting a change in title, but with the primary object of raising ready cash. Throughout the course of the dealings, it was Brown, and not his wife, who took an active part in the various negotiations. Concededly, Brown alone was present at the time of the Million settlement, and it was he who received the

$1,500 cash payment. Again, Brown felt no hesitancy in approaching defendant for small advances during the years of 1927 and 1928, apparently without any prior discussion with his wife, or in accepting this money in his own name and on his own responsibility. The record indicates a dozen or more of such payments. Finally, Brown felt perfectly free to use the fund held by defendant to defray expenses and charges against other properties owned by him. Certainly, such a course of dealing is entirely inconsistent with the theory of a gift.

In the same way, plaintiff did not show any disposition, during the same period, to deal with the properties or their proceeds as her own. As noted above, she made no objection to the payment of certain amounts to her husband. She was fully cognizant of the fact that he received at least some of these payments, but made no objection thereto until after the account had been closed and shortly before the present bill in equity was filed. She showed no interest in any of the transactions which followed the recording of the titles in her name. On the contrary, she not only allowed her husband to attend the Million settlement but also permitted the Million mortgage to be taken, not in her name, but in that of the defendant. If the properties were the subject of a gift to her, no valid reason could have been given why this mortgage should not also have been put in her name. This, again, is significant as showing that she regarded the whole transaction, not as one for her benefit, but for the benefit of her husband.

We are, therefore, of opinion that the presumption of a gift, arising out of the record title, has been successfully overthrown by the defendant. The one desire of the Browns was to prevent the reckless dissipation of the husband's property and to provide for its wise and efficient management. Their dealings with the property are consistent with no other theory. It would

be manifestly unfair, at this late date, to permit them to deny the necessary effect of their relations with the defendant. We cannot see that plaintiff has suffered any possible injustice. The original funds that went into the Gebhardt mortgage were not hers, but those of her husband. She, at least partially, attained her objective by delaying the dissipation of those funds for another two years through the intervention of the defendant. The funds were applied, without objection, to the use of herself and of her husband, and in most instances concededly for their mutual benefit.

This case, therefore, does not fall within the line of those cited above, but rather into the class illustrated by Katz v. Katz, 309 Pa. 115, 163 A. 214. We have not discussed in detail the question of any intent to defraud creditors, except in so far as it might have a bearing upon the reasons for the initial transaction. If, however, any fraud was committed, plaintiff was concededly a party to it and the law will not relieve her further from the situation in which she has voluntarily placed herself.

Decree affirmed at appellant's cost.