## Peardon *v.* Peardon, Appellant.

14

*Robert Dechert,* with him *H. Francis DeLone, William F. Fox, Fox & Honeyman* and *Barnes, Dechert, Price, Myers & Clark,* for appellant.

*Paul P. Wisler,* with him *Cassin W. Craig* and *Wisler, Pearlstine, Talone & Gerber,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1950:

Defendant's appeal in this case meets the insuperable obstacle that the findings of fact by a chancellor, approved by the court en banc, have the force and effect of the verdict of a jury and will not be disturbed on appeal if there is any evidence to support them. Here there *is* such evidence.

The parties were married in 1923; they were divorced in 1946. By deed of December 30, 1942 a farm property in Montgomery County was acquired by the wife, Rose M. Peardon; it was purchased principally with money of her own but with some contributions by her husband, Roswell Cameron Peardon. On May 10, 1943, she deeded the property, through a strawman, to herself and her husband as tenants by the entireties. In September, 1947 her husband instituted the present proceedings

under the Act of May 10, 1927, P. L. 884, which provides that whenever any husband and wife thereafter acquiring property as tenants by the entireties shall be divorced, either of them may bring suit in equity against the other to have the property sold and the proceeds divided between them. The wife defendant asked for a dismissal of the bill on the ground that the deed of May 10, 1943 was obtained from her by fraud, that she was compelled to execute it against her will, that she signed it because of threats made against her by her husband, and that he obtained her signature by undue influence. The chancellor found, however, that "She knew the legal import and effect of the deed, and there was no fraud, undue influence or overreaching practiced upon her to procure her signature thereto, nor was the execution of the deed the result of any accident, mistake or misunderstanding on her part. The conveyance carried out her intention and desire to put the title to the land in the names of herself and her husband." The court en banc approved these findings, and the court appointed a trustee to sell the property at public sale and divide the proceeds equally between the parties.

The preliminary question arises whether, if defendant's claims are meritorious, she should not have brought an action to set aside the deed instead of making this collateral attack upon its integrity. Be that as it may, it is clear that the chancellor was justified in stating, as he did, that "Her own frank testimony completely refutes the averments of her answer." She testified that both she and her husband had put cash into the purchase of the property, that it was "a mutual undertaking", that she had "wanted it put in both names at the time of the purchase" but "*he* didn't want it", and that she always looked upon it as their joint property. She further stated that when he presented a deed to her making the title to himself (she did not know whether for the entire or a half interest) she told him that she "always wanted

it in both names" and that if it were deeded "over to both of us" it would be "all right". She admitted that "there was no force used by Mr. Peardon to compel" her "to sign it", that when she signed it she was "fully aware" of what she was doing, that she "understood the effect of the deed . . . and that it would place title in both names," and that that is what she "wanted in December of 1942 when we bought the property."

The marital career of the parties was unhappily marred by many disagreements and disturbing incidents, due largely, it would seem, to extremely reprehensible conduct on the part of the husband, but there is no evidence whatever that in connection with the deed of May 10, 1943 there was any duress, coercion, imposition, overreaching, or undue influence practiced upon defendant or anything to indicate that her act was other than wholly free and voluntary. She was willing to change her individual title to one by the entireties either because, as she testified, she thought from the beginning that that was the fair thing to do, or because, in an attempt to improve their relations, she thought it best to resort to methods of "appeasement" and the execution of the deed at his request was in accordance with that policy. Whatever her motive may have been she acted advisedly and of her own accord. It is true that when property is transferred from husband to wife there arises a rebuttable presumption that a gift was intended,[1] whereas when a husband obtains his wife's

---

[1] *Bowser v. Bowser,* 82 Pa. 57; *Earnest's Appeal,* 106 Pa. 310; *Waslee v. Rossman,* 231 Pa. 219, 228, 80 A. 643, 646; *Buckley v. Buckley,* 277 Pa. 215, 120 A. 926; *Loeffler's Estate,* 277 Pa. 317, 324, 121 A. 186, 188; *Gassner v. Gassner,* 280 Pa. 313, 124 A. 483; *Buckwalter Stove Co. v. Edmonds,* 283 Pa. 236, 128 A. 835; *Katz v. Katz,* 309 Pa. 115, 120, 163 A. 214, 216; *Mahjoubian v. Mahjoubian,* 321 Pa. 354, 184 A. 455; *Werle v. Werle,* 332 Pa. 49, 1 A. 2d 244; *Christy v. Christy,* 353 Pa. 476, 46 A. 2d 169; *Brown v. Nagle,* 118 Pa. Superior Ct. 234, 238, 239, 178 A. 505, 507.

property without adequate consideration the law creates a rebuttable presumption that a trust is created in her favor and. if the husband claims a benefit arising from the transaction he must show affirmatively that he acted in good faith and that he took no. undue advantage of his wife.[2] Plaintiff here testified that he discussed the matter with his wife and that the reason for placing the title of the property in both their names was to relieve him, in the event of her prior death, from the payment of inheritance taxes. Wholly apart from his explanation, however, defendant's own admissions, as previously pointed out, completely justified the findings of the court below.

According to evidence presented on defendant's behalf, her husband had been carrying on a meretricious relationship with a woman whom he later married after his divorce from defendant, and defendant claims that when the deed of May 10, 1943 was executed he had no intention of continuing to live with her. The court found, however, that plaintiff had not been guilty of the misconduct imputed to him, at least prior to the making of the conveyance, and that the evidence did not warrant a finding that he had no intention at that time of continuing the marriage. Defendant also points to the fact that in connection with the divorce proceedings in Nevada the court in that State found that an assignment made by defendant to plaintiff on September 21, 1943 of a certain interest in an invention was obtained from her by duress and coercion; (*Peardon v. Peardon,* 65 Nev. 717, 201 P. 2d 309). The testimony in regard to that transaction, however, was wholly different from that relating to the one here in question;

[2] *Darlington's Appeal,* 86 Pa. 512; *Loeffler's Estate,* 277 Pa. 317, 323, 324, 121 A. 186, 188; *Raub's Estate,* 286 Pa. 575, 577, 134 A. 451, 452; See also *Hornak v. Hornak,* 309 Pa. 281, 163 A. 512; *Werle v. Werle,* 332 Pa. 49, 52, 1 A. 2d 244, 246.

the evidence there was that plaintiff, in order to obtain the assignment, shamefully abused defendant and threatened her with personal violence; nothing of that kind appears in the present record.

The decree is affirmed at appellant's costs.