Lapayowker, Appellant, *v.* Lincoln College Preparatory School.

Argued May 25, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused November 16, 1956.

*F. A. Truscott*, with him *Samuel Moyerman* and *Truscott, Berguido, Kline, O'Neill & Howson*, for appellant.

*Robert J. Callaghan*, with him *Josephine H. Klein, Arlin M. Adams*, and *Schnader, Harrison, Segal & Lewis*, for appellees.

OPINION BY MR. JUSTICE CHIDSEY, September 24, 1956:

This is an appeal from a final decree dismissing a wife's complaint in equity to secure a transfer of 48 shares of common stock held by the individual defendant[1] in defendant corporation. She also seeks 25 shares of nonvoting preferred stock held in the defendant corporation's treasury. The total authorized and issued stock in the corporation consists of 50 shares of common and 50 shares of preferred. After a hearing on the merits at which extensive testimony was taken, the chancellor entered an adjudication in favor of de-

[1] Howard S. Anders who was named as a defendant, as president of defendant corporation, has since died; the only individual defendant is Dr. Lapayowker, plaintiff's husband.

fendants together with detailed findings of fact and conclusions of law. Plaintiff's exceptions were overruled by the court en banc which approved the chancellor's findings and dismissed the complaint. This appeal followed.

The facts as found by the chancellor may be summarized as follows: Plaintiff, Rose Lapayowker, and the individual defendant, Dr. Manfred E. Lapayowker, are husband and wife. They were married in 1921, and separated in 1951. Dr. Lapayowker is the principal of Lincoln College Preparatory School, Inc., a Pennsylvania corporation which traces its beginning to a sole proprietorship founded by him in 1923. Lincoln College Preparatory School is a private high school located in Philadelphia with a student body at the present time of 350 and a faculty of 11 members. In 1932 Dr. Lapayowker incorporated the school under the laws of the State of Delaware and transferred the assets of the proprietorship to that corporation. His purpose in incorporating was to avoid an attachment of the school's assets by reason of a bond and warrant he had given to accompany a mortgage on his former home, 1603 South 6th Street, Philadelphia, which he had sold in 1924 under and subject to the mortgage. Pursuant to an oral agreement between plaintiff and the individual defendant, the controlling shares of the Delaware corporation were placed in plaintiff's name to be held by her until defendant Lapayowker's liability on the bond was extinguished. In May, 1934, the school was incorporated in Pennsylvania. Immediately thereafter, the Pennsylvania corporation purchased the Delaware corporation and forty shares of common and twenty-five shares of preferred stock were issued to plaintiff to replace the shares held by her in the Delaware corporation. At the same time, eight shares of

common stock were issued to Dr. Lapayowker which he immediately transferred to plaintiff. These forty-eight shares of common stock were and are the controlling interest in the school. Notwithstanding the registration of the shares in her name, plaintiff never operated or attempted to control the operation of the school, never demanded any dividends or accounting of the school's finances, never demanded that any corporate meetings be held or that she be permitted to attend such meetings. At all times defendant Lapayowker operated the corporation as though it were his own individual property in the same manner as he ran the school itself. The majority of the purported meetings of the directors and stockholders were never held, but Dr. Lapayowker prepared minutes of such alleged meetings. The operation of the school was virtually the sole means by which Dr. Lapayowker supported himself, his wife and his three children. Plaintiff never demanded the stock certificates for the stock issued in her name which have always been in Dr. Lapayowker's possession.

In July, 1935, at the request of defendant Lapayowker, plaintiff endorsed and returned to the corporation as treasury stock the twenty-five shares of preferred. In 1932 the buyer of 1603 South 6th Street, who had purchased the property subject to the mortgage, defaulted in his payments. A series of legal proceedings was then instituted by the assignee of the mortgagee to enforce defendant Lapayowker's personal liability on the bond which culminated in 1939 in an equity action to set aside the transfer to plaintiff of the eight shares of common stock on the ground that it was made without consideration and in fraud of creditors. Both plaintiff and individual defendant filed separate answers to this complaint in equity;

averring that the transfer was made to Rose Lapayowker in payment to her of $850 previously borrowed from her by Dr. Lapayowker. The chancellor expressly found these averments were false, and that plaintiff paid no consideration for these eight shares but was holding them, together with the forty shares of common stock issued to her, for Dr. Lapayowker's benefit until his obligation on the bond was extinguished. The equity action brought by the assignee of the mortgagee was settled in 1939 and defendant Lapayowker's personal liability on the bond extinguished.

In 1947 defendant Lapayowker considered dissolving the corporation and reverting to a single proprietorship and asked plaintiff to endorse the certificates for the eight shares and the forty shares over to him. Plaintiff did so and her signature was witnessed by their daughter, Miriam. At the same time, at Dr. Lapayowker's request, Miriam signed her name as a witness to plaintiff's signature on the certificate for twenty-five shares of preferred stock which plaintiff had signed in 1935. Thereafter, defendant Lapayowker has kept the stock certificates in his own possession and has also continued to operate the school.

The applicable law is well established and quite clear. When a husband purchases real or personal property with his own funds and places it in his wife's name, or transfers such property to his wife without consideration, there is a factual presumption that a gift was intended and in order to rebut that presumption and establish a resulting trust in his favor, the husband must support his claim by clear, explicit and unequivocal[2]—though not necessarily uncontradict-

---

[2] *Bowser v. Bowser*, 82 Pa. 57; *Earnest's Appeal*, 106 Pa. 310; *Waslee v. Rossman*, 231 Pa. 219; *Buckley v. Buckley*, 277 Pa. 215;

ed[3]—evidence. On the other hand, where a wife pays for property and has the title placed in the name of her husband, or where a husband obtains his wife's own property without adequate consideration, the law creates a rebuttable presumption that a trust is created in her favor, and if the husband claims a benefit arising from the transaction he must show affirmatively that he acted in good faith and that he took no undue advantage of his wife.[4] An analysis of the application of this latter principle reveals that in all the cases where it was held that a transfer from a wife to her husband had given rise to a resulting trust in favor of the wife, the evidence was clear that the property was beneficially owned by the wife before the transfer. In other words, the presumption of a resulting trust in the case of a transfer by a wife to her husband arises only where the wife at the time of transfer holds not only legal title to the property, but is the beneficial owner thereof.

Applying the above stated principles of law to the instant case, and keeping in mind the familiar and

---

*Loeffler's Estate*, 277 Pa. 317; *Gassner v. Gassner*, 280 Pa. 313; *Buckwalter Stove Co. v. Edmonds*, 283 Pa. 236; *Katz v. Katz et al.*, 309 Pa. 115; *Mahjoubian v. Mahjoubian et al.*, 321 Pa. 354; *Werle v. Werle*, 332 Pa. 49; *Christy v. Christy*, 353 Pa. 476. See also *Peardon v. Peardon*, 365 Pa. 13, and *Stewart v. Hooks (et al.)*, 372 Pa. 542. *Knecht v. Reichard*, 60 Pa. Superior Ct. 273; *Brown v. Nagle*, 118 Pa. Superior Ct. 234. Bogert, Trusts and Trustees, §459(a) ; Scott, The Law of Trusts, §442.

[3] *Quinn v. Gormley*, 302 Pa. 360; *Christy v. Christy*, supra.

[4] *Darlington's Appeal*, 86 Pa. 512; *Wormley's Estate*, 137 Pa. 101; *Nichols v. Nichols et al.*, 149 Pa. 172; *Loeffler's Estate*, supra; *Raub's Estate*, 286 Pa. 575; *Peardon v. Peardon*, supra; *DeBernard v. DeBernard*, 384 Pa. 194. See also *Werle v. Werle*, supra; Bogert, Trusts and Trustees, §460(b) ; Scott, The Law of Trusts, §442, supra.

well-settled rule that findings of fact by a chancellor, approved by the court en banc, have the force and effect of the verdict of a jury, and will not be disturbed on appeal if there is evidence to support them, we are of the opinion that the decree of the court below should be affirmed.   There is no question that the assets of the school originally belonged to Dr. Lapayowker, it having been founded and owned by him in its proprietary form since 1923.   In 1932 when Dr. Lapayowker caused the school to be incorporated under the laws of the State of Delaware and had the controlling shares placed in his wife's name, presumptively he made a gift of these shares to the plaintiff.   The forty shares of common and twenty-five shares of preferred stock of the Pennsylvania corporation, being issued in plaintiff's name in substitution for the shares of the Delaware corporation which had stood in her name, would for the same reason presumably be beneficially owned by the plaintiff.   It is apparent that the shares of the Pennsylvania corporation stand on the same footing as those of the Delaware corporation since they were issued in substitution therefor.   However, the chancellor found the evidence sufficient to rebut the presumption of a gift—that the shares of the Delaware corporation were placed in plaintiff's name temporarily because Dr. Lapayowker was personally obligated on the mortgage bond above mentioned and wanted to prevent an attachment of the school's assets.   There is ample evidence in the record to support this finding.   Not only did Dr. Lapayowker and a member of the bar who represented him at that time so testify, but all the attendant circumstances show that Dr. Lapayowker always retained beneficial ownership of the stock here involved.   The record is conclusive that from its inception up to the present time, Dr. Lapayowker operated

and exercised exclusive control over the school without regard to any alleged interest of plaintiff therein. He kept exclusive possession of the stock certificates at all times. During all the years that the controlling shares were registered in her name, plaintiff never manifested any of the common indicia of ownership such as an active role in conducting the school, a demand for an accounting of profits, attendance at board meetings, or anything else consistent with her present assertion that she owned the controlling interest in the school. The admitted fictitious record of the meetings of shareholders and directors lends support to instead of weakening the individual defendant's position. They demonstrate that after incorporating the school, Dr. Lapayowker continued to operate it precisely as he had before incorporation. He alone conducted the business, without consulting plaintiff, a totally incredible situation if plaintiff really owned the controlling shares of the corporation. Her inactivity is completely consistent with the position that she was only the nominal owner. Plaintiff did not institute these legal proceedings until 1953, more than six years after the assignment of the stock to her husband.

The case of *Christy v. Christy,* 353 Pa. 476, 46 A. 2d 169, is squarely in point. There a husband purchased real estate on which he conducted a restaurant business, and placed the title in his wife's name for reasons of business convenience. The wife's name was used because the title insurance company hesitated to issue a policy in the husband's name since he had recently been adjudicated a bankrupt and it was feared his creditors might attack the purchase as having been made with funds concealed in the bankruptcy proceedings. The wife leased the property to her husband and he operated the business as his own, exercising exclu-

sive dominion over the property for some ten years. As in the instant case, the wife had legal title to practically the entire business interest. This Court held that the evidence was sufficiently clear to rebut the presumption that the husband had made a gift to the wife and affirmed the decree ordering the wife to reconvey the property to her husband. We said at p. 479 : ". . . If defendant's testimony were true it would mean that plaintiff made her a gift not only of the real estate but also of the entire restaurant business; he said, according to her: 'Everything is going to be yours. I won't have anything.' It is quite incredible that he should have so stripped himself and then, during all the succeeding years, have conducted the business, not for his own benefit, but for hers,—a situation the more improbable in view of the fact that defendant never called upon him for an accounting of the profits of the business and the further fact that, as previously stated, she executed a ten year lease which brought her no rent whatever from the property."

Plaintiff maintains that the written stock records of defendant corporation show that the shares in question were issued in her name and that parol evidence is inadmissible to vary the terms of these writings. However, the law is well established that when a husband causes his property to be placed in the name of his wife, parol evidence is always admissible to rebut the presumption of a gift and to show that a trust was intended. Bogert, Trusts and Trustees, §459; Scott, The Law of Trusts, §443. In *Christy v. Christy,* supra, parol evidence was admitted to show that real estate, the deed to which was in the name of the wife, was purchased with the husband's funds and title taken in his wife's name for purposes of business convenience only, no gift being intended. To the same effect are *Katz v.*

*Katz et al.,* 309 Pa. 115, 163 A. 214; *Mahjoubian v. Mahjoubian et al.,* 321 Pa. 354, 184 A. 455, cited in footnote 2, supra.

Plaintiff next contends that as a matter of law the chancellor could not find that the individual defendant (and plaintiff) falsely averred in the 1939 proceeding that the eight shares were transferred to plaintiff for consideration. She contends that this averment constituted a binding judicial admission on Dr. Lapayowker's part, conclusive against him. In Wigmore on Evidence, 3rd ed., Vol. IV, §1066, p. 59, it is stated: "The use here discussed, of informal or quasi-admissions, has nothing to do with the use of *pleadings as solemn or judicial admissions. . . .* The latter are conclusive in their nature; but that effect is confined to the cause in which they are made. When used in other causes as ordinary admissions, they are of course . . . *not conclusive; . . .".* The law in Pennsylvania is in accord. We have repeatedly held that pleadings are conclusive in their nature only so far as their effect is confined to the cause in which they are filed. When used in other proceedings, they are merely in the nature of admissions by the parties of the facts contained therein, and do not estop them from taking different positions in a subsequent suit: *Truby v. Seybert,* 12 Pa. 101, 103; *Houseman v. International Navigation Company,* 214 Pa. 552, 567, 64 A. 379; *Commonwealth v. Monongahela Bridge Company,* 216 Pa. 108, 115, 64 A. 909; *Floyd v. Kulp Lumber Company,* 222 Pa. 257, 270, 71 A. 13; *Lindsay v. Dutton,* 227 Pa. 208, 212, 75 A. 1096; *Hess v. Vinton Colliery Company,* 255 Pa. 78, 87, 99 A. 218; *Morrett v. Fire Association of Philadelphia,* 265 Pa. 9, 12, 108 A. 171; *Greek Catholic Congregation of Olyphant Borough v. Wilson Coal Company,* 329 Pa. 341, 349, 198 A. 841; *Cherry et al. v. Mitosky, Admr.,*

*et al.*, 353 Pa. 401, 407, 45 A. 2d 23; *Gibson v. Rowland,* 35 Pa. Superior Ct. 158, 165; *Nusbaum v. Warwick Hotel Company,* 112 Pa. Superior Ct. 277, 282, 283, 170 A. 388; *Associates Discount Corporation v. Kelly,* 169 Pa. Superior Ct. 74, 77, 82 A. 2d 689; Henry, Pennsylvania Evidence, Vol. 1, §82; cf. *Buehler v. Philadelphia & Reading Ry. Co. et al.,* 280 Pa. 92, 95, 124 A. 325.

Plaintiff relies on the case of *Brehm v. Wyoming Bank and Trust Co.,* 351 Pa. 281, 286, 40 A. 2d 464. There we held, in an action by a husband against a bank to recover the total deposits in a bank account on the grounds that withdrawals by his wife were unauthorized, that the husband's subsequent actions constituted ratification of the withdrawals. While it is true that in the *Brehm* case it was intimated in the opinion that a person is bound by a statement of fact sworn to by him in a pleading in another proceeding, this was not necessary for the decision of the case, and if taken literally, would be directly contrary to the many authorities cited above which were decided both before and after that decision. Such a result was not intended as is clearly indicated by the fact that the two authorities cited in the *Brehm* case in support of the text in this regard are expressly in accord with the many authorities and established rule above stated.

As before stated, the presumption of a resulting trust in the case of a transfer by a wife to her husband applies only where the wife transfers her own property. The stock here in question never belonged to the plaintiff as she at no time had any beneficial interest therein, and therefore no presumption of a resulting trust arises in her favor as a result of the transfer back to her husband in 1947. Plaintiff contends that Dr. Lapayowker was guilty of fraud in obtaining her signature in retransferring the stock to him. She testified

that her husband placed pieces of blank paper over the stock certificates, showed her where to sign, and told her they were some financial papers. This was denied by the husband and not supported by their daughter Miriam who witnessed the transaction. The chancellor refused to accept the alleged fraudulent manner in which her signature was obtained and found that she knowingly and voluntarily transferred the shares to her husband. The question of credibility of the witnesses depends upon matters which cannot be reduced to writing in the record, and to which the opinion of the chancellor who saw and heard them is therefore entitled to great weight: *Weiss v. First National Bank of Scranton,* 321 Pa. 365, 184 A. 451. Moreover, at best the plaintiff failed to establish fraud by the clear and convincing evidence required: *Wagner v. Somerset County Memorial Park, Inc.,* 372 Pa. 338, 93 A. 2d 440.

Plaintiff finally contends that if, as the chancellor ruled, the stock was originally placed in plaintiff's name to defraud creditors, Dr. Lapayowker forfeited his right to retain the stock transferred to him by her. The case of *Bonesteel v. Sullivan,* 104 Pa. 9, relied on by plaintiff, does not support her position since the decision there—holding that a mortgagee could enforce a mortgage which had been given him by the mortgagor without consideration in fraud of the latter's creditors —was based on the principle that the parties to an illegal transaction will be left in the position where they voluntarily place themselves. Here the plaintiff voluntarily retransferred the common stock to her husband and the preferred stock to the corporation where the title thereto has respectively remained for many years. Under the principle of the *Bonesteel* case the wife is not entitled to the affirmative relief which she seeks.

Decree affirmed, costs to be paid equally by appellant and the individual appellee.